UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Hawthorne Industrial Products, Inc. | No.: 2:22-cv-02724 |
| v. | District Judge Fallon |
| Hanwin Shipping Limited et al. | Mag. Judge van Meerveld |

**MEMORANDUM IN SUPPORT OF MOTION FOR EMERGENCY HEARING
TO RELEASE WRITS OF MARITIME ATTACHMENT & GARNISHMENT,
OR IN THE ALTERNATIVE, TO SET SECURITY**

MAY IT PLEASE THE COURT:

Subject to its restricted appearance under Supplemental Admiralty Rule E(8) (docs. 12 and 18), defendant Hanwin Shipping Limited ("Hanwin") moves for an emergency hearing pursuant to Supplemental Admiralty Rule E(4)(f), requiring plaintiff Hawthorne Industrial Products, Inc. to show why plaintiff's writs of foreign attachment against bunkers and other Hanwin property aboard the INDIGO SPICA, and as against third parties Revelle Shipping Agency ("Revelle") (doc. 14), Coastal Cargo Company ("Coastal Cargo") (doc. 15), and Blue Water Shipping Company ("Blue Water") (doc. 16) should not be vacated.  In support of its motion, Hanwin would respectfully show as follows:

## FACTS

*Hawthorne's Position and Prior Litigation in This Matter*

Based on the pleadings, Hanwin understands that plaintiff Hawthorne Industrial Products Inc. ("Hawthorne") is a Florida corporation engaged in the business of importing wood products

from overseas as consignee for third party beneficial owners of cargo – here, plywood – carried aboard the vessels TAC IMOLA and INDIGO SPICA.[1]

As noted in a related case pending before this Court,[2] Hanwin entered into a charter party with Transatlantica Commodities Pte Ltd. ("Transatlantica"), on or about November 3, 2021, for Hanwin to time charter the *M/V Tac Imola* from Transatlantica, as disponent owners.  On or about November 24-25, 2021, the Vessel took on a large load of plywood, along with other cargo, for carriage to Baltimore, Maryland.  At some point during the voyage, the plywood cargo caught fire as a result of improper stowage, allowing the cargo to shift and build friction between itself, other cargo, and the Vessel itself.  As a result of the fire, the now-damaged cargo required special handling to discharge from the Vessel, the Vessel had to make unscheduled port calls to discharge portions of the damaged cargo; and port terminals have charged significantly more for the special handling required to offload the damaged cargo.

The cargo fire was caused by Transatlantica's lack of due diligence in loading, stowing, and securing the cargo, and Transatlantica's failure to properly load, stow, and secure the cargo constituted a breach of the charter party between Hanwin and Transatlantica.

Hanwin and Transatlantica are presently engaged in arbitration in London concerning the TAC IMOLA dispute, as well as a number of U.S. litigations seeking security and countersecurity upon their respective claims.

---

[1] Hanwin assumes the truth of Hawthorne's allegations solely for purposes of this motion, at the pleading stage of this case, to release the writs and vacate Hawthorne's attachment, and reserves its right to challenge Hawthorne's allegations following discovery.

[2] The related case is *Transatlantica Commodities Pte. Ltd. v. Hanwin Shipping Ltd. et al*, No. 22-cv-2454-EEF-JVM. Following a status conference on Aug. 8, 2022 (*see* Doc. 26) and the posting of security by Hanwin (*see* Doc. 27), Transatlantica's Rule B attachment was released.

*Hawthorne's Prior Litigation in This Matter*

Hawthorne has previously sought and received security for its own claims for cargo damage. On June 6, 2022, Hawthorne filed suit in the United States District Court for the District of Maryland in an action styled *Hawthorne Industrial Products Inc. v. M/V TAC IMOLA et al.*, No. 22-cv-01376 (the "Maryland Action"), and arrested the TAC IMOLA under Supplemental Rule C. Under that complaint, Hawthorne sued the head owners of the TAC IMOLA – Ratu Shipping Co. SA, Nisshin Shipping Co Ltd, and Fleet Management Ltd-HKG – seeking recovery on its claims for cargo damage.[3] On June 13, 2022, as reported by Hawthorne in its motion for release of the TAC IMOLA, a letter of undertaking was issued by The Britannia Steam Ship Insurance Association of Europe securing the claim of Plaintiff conditioned to answer the judgment of the Court. *See* Doc. 17 in the Maryland Action (Motion Requesting Release of Vessel from Arrest). The TAC IMOLA was released from arrest on June 14, 2022. *See* Doc. 18 in the Maryland Action.

*Current Status of the INDIGO SPICA and Delay Caused by Hawthorne's Writs*

In this matter, writs of foreign attachment have been served upon Revelle, Coastal Cargo, and Blue Water. *See* Docs. 14-16 (Rule B writs) and Docs. 21-23 (affidavits of service). Revelle is Hanwin's shipping agent in the Port of New Orleans. Coastal Cargo is a local stevedoring company which has already commenced discharging the cargo laden aboard the vessel INDIGO SPICA, one of the two vessels mentioned in Hawthorne's verified complaint (doc. 1 at, *e.g.*, ¶¶ 7, 8, 47-53). Upon information and belief, Blue Water is not involved in Hanwin's calls to the Port of New Orleans.

---

[3] On July 8, 2022, Hawthorne amended its complaint to name Transatlantica and Hanwin. *See* Doc. 29 in the Maryland Action.

Any funds that Hanwin transferred to local agent Revelle have been committed to pay service providers like Coastal Cargo and compulsory pilots. Such funds are no longer Hanwin's property, so those funds are not eligible for attachment. But Hawthorne's writs of foreign attachment have effectively frozen the funds in Revelle's possession. Revelle cannot use those funds to pay the port charges the ship is incurring or will yet incur. In turn, stevedores Coastal Cargo have refused to continue discharging the INDIGO SPICA and another vessel, the BELKNIGHT, until Coastal Cargo can be assured it will be paid. This is particularly troubling because as mentioned above, Transatlantica's attachment of the BELKNIGHT was lifted by this Court just 15 days ago. *See Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Limited et al.*, No. 22-cv-02454, Doc. 26 (Order Granting Motion to Approve Security and to Order Posting of Countersecurity) (Aug. 9, 2022). And although the two vessels are alongside Coastal Cargo's facilities in the Port of New Orleans, they continue to sit idle, taking up valuable berth space while hurricane season progresses toward its peak.

## ARGUMENT

I. **HAWTHORNE CANNOT MEET ITS BURDEN UNDER RULE B AND RULE E TO MAINTAIN THE WRITS OF ATTACHMENT**

   A. **Applicable Law**

The requirements of Rule B are well-summarized in *Space Shipping Ltd. v. St Shipping & Transp. PTE Ltd.*

> Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure allows a maritime attachment of property when a plaintiff satisfies the applicable filing, notice, and service requirements and shows that: (1) the plaintiff has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006)

>   (abrogated on other grounds by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009)); *see also* Fed. R. Civ. P., Supp. Adm. Rule B.

*Space Shipping*, No. 17-10570, 2017 U.S. Dist. LEXIS 173593, at *2-3 (E.D. La. Oct. 19, 2017). As noted by this Court, at a Rule E(4)(f) post-arrest hearing, "[t]he attachment must be vacated if the plaintiff fails to sustain his burden of showing that the requirements of Rules B and E are satisfied. . . [and] the attaching party must present sufficient evidence to show probable cause for the attachment."

### B. Hawthorne Has Not Shown Probable Cause to Maintain the Attachment Over Hanwin as Time Charterer

Hawthorne has attempted to state two claims in this matter for breach of maritime contract or for maritime tort. As pleaded, each suffer from notable deficiencies making them subject to dismissal.

With respect to Hawthorne's contract claim, with respect to both the TAC IMOLA and the INDIGO SPICA, Hawthorne has not attached any contract between it and Hanwin – as there is none.

With respect to Hawthorne's tort claim, Hanwin acted as a time charterer with disponent owners Transatlantica, who was the originator of the problems aboard the TAC IMOLA. Hawthorne previously sued the head owners of the TAC IMOLA and received security in respect of that claim.

Moreover, with respect to both the TAC IMOLA and the INDIGO SPICA, Hawthorne has not sufficiently alleged or identified Hanwin's duty in tort in its verified complaint. Hanwin's liability as time charterer in tort is limited, and Hawthorne's pleadings do not sufficiently allege what duty Hanwin owes to Hawthorne under these circumstances. Notably, the Fifth Circuit Court of Appeals on August 15, 2022 issued its opinion in *Grand Famous*

*Shipping Limited v. China Navigation Co. Pte., Limited*, clarifying the scope of a time charterer's duty to third parties with whom they are not in privity. As relevant here, Judge Edith Brown Clement wrote for the court:

> While time charterers may face some exposure to liability for negligence to third parties, that exposure is not unlimited.
>
> In this circuit, time charterers owe a hybrid duty arising from contract and tort, to persons with whom [they have] no contractual relationship, including vessel passengers, to avoid negligent actions within the sphere of activity over which [they] exercise[] at least partial control. . . [T]he traditional spheres of activity in which a time charterer exercises control and thus owes a duty include choosing the vessel's cargo, route, and general mission, as well as the specific time in which the vessel will perform its assignment. Most importantly for our purposes, *a time charterer owes no duty beyond these spheres* unless the parties vary the traditional assignment of control by contract or custom.
>
> In other words, time charterers *do* owe duties to third parties. Namely, to avoid negligent acts within the traditional spheres of activity over which they exercise control. But those spheres are well defined, and time charterers are not—as a matter of law— liable for acts taken outside those spheres unless the parties agree otherwise by contract or custom.

*Grand Famous Shipping Ltd. v. China Navigation Co.*, No. 22-20002, 2022 U.S. App. LEXIS 22640, at *16-17 (5th Cir. Aug. 15, 2022) (internal citations and quotations omitted, emphasis in original). As stated in *Grand Famous*, absent a sufficient allegation of negligent acts by Hanwin within a traditional sphere of activity over which Hanwin exercises control, Hanwin is not liable to Hawthorne in tort for acts taken outside those spheres absent an allegation based on contract or custom as between those parties.

## II. IN THE ALTERNATIVE, THE COURT SHOULD SET SECURITY EXPEDITIOUSLY TO PERMIT HANWIN'S VESSELS TO COMPLETE OPERATIONS AND DEPART

In the alternative, Hanwin moves the Court to expeditiously set security pursuant to Supplemental Rule E(5)(a) in order to avoid any further disruption to the INDIGO SPICA and BELKNIGHT, whose cargo operations here in the Port of New Orleans have been suspended by virtue of this action. Weather permitting, the BELKNIGHT should be able to complete discharging its cargo and leave the Port of New Orleans as soon as this coming weekend. The discharge of the INDIGO SPICA should be complete a day or two later. But stevedores and garnishees Coastal Cargo will not continue unloading the INDIGO SPICA or the BELKNIGHT as long as the funds held by Revelle that are earmarked to pay Coastal Cargo are frozen.

The only property of Hanwin's within the district that is subject to attachment are the bunkers on board the INDIGO SPICA, the value of which is $160,396.59. On the date of the attachment (August 19, 2022), Hanwin estimates the value of its fuel bunkers on board the INDIGO SPICA, after accounting for the portion of bunkers owned by disponent owners upon delivery, as follows:

| Product | Quantity | Value |
|---|---|---|
| Low Sulfur Fuel Oil | 126.51 metric tons | $95,894.58 ($758 per metric ton – Platts New Orleans, August 19, 2022) |
| Marine Gas Oil | 56.73 metric tons | $64,502.01 ($1,137 per metric ton – Platts New Orleans, August 19, 2022) |
| | Total: | $160,396.59 |

Hanwin is willing to post security in the foregoing amount as the value of Hanwin's bunkers aboard the INDIGO SPICA, together with an additional $19,247.59, representing 6%

interest *per annum* for two years as provided by Supplemental Rule E(5)(a), for total security in the amount of $179,644.18. Once that security is posted the writs of attachment should be lifted and the vessel allowed to sail.

> Respectfully submitted,
>
> *s/ David B. Sharpe*
> David B. Sharpe, T.A. (LA Bar No. 20370)
> dsharpe@lawla.com
> Alan R. Davis (LA Bar No. 31694)
> adavis@lawla.com
> Adelaida Ferchmin (LA Bar No. 28959)
> aferchmin@lawla.com
> LUGENBUHL, WHEATON, PECK,
> RANKIN & HUBBARD
> 601 Poydras Street, Suite 2775
> New Orleans, LA  70130
> Telephone: (504) 568-1990
> Facsimile: (504) 310-9195
>
> and
>
> Todd G. Crawford (LA Bar No. 21050)
> tcrawford@lawla.com
> LUGENBUHL, WHEATON, PECK,
> RANKIN & HUBBARD
> 801 Travis Street, Suite 1800
> Houston, Texas  77002
> Telephone: (713) 222-1990
> Facsimile: (713) 222-1996

**Certificate of Service**

I hereby certify that this document was served upon all counsel of record this 25th day of August, 2022, via email and by operation of the Court's CM/ECF system.

> *s/ David B. Sharpe*
> David B. Sharpe