1148-20936                                                                                    #1911288

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HAWTHORNE INDUSTRIAL PRODUCTS, INC.<br>                          **Plaintiff**<br><br>**VERSUS**<br><br>HANWIN SHIPPING LIMITED<br>also known as<br>HANWIN SHIPPING COMPANY LIMITED,<br>SHANGHAI HANYING INTERNATIONAL LOGISTICS CO., or<br>CITY EXPANSION LIMITED,<br>                          **Defendants**<br><br>**AND**<br><br>M/V INDIGO SPICA,<br>IMS MARITIME SA and<br>IMECS CO LTD<br>                          **Garnishees** | CIVIL ACTION NO.: 2:22-cv-02724<br><br>DISTRICT JUDGE:<br>HON. ELDON E. FALLON<br><br>MAGISTRATE JUDGE:<br>HON. JANIS VAN MEERVELD |

## AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned authority, personally came and appeared:

### AARON B. GREENBAUM

who, after being duly sworn did depose and say:

1.      I am over the age of 21 and competent to make this affidavit.

2.      I am a member of the Bar of this Court, am associated with the firm of Pusateri, Johnston, Guillot & Greenbaum, LLC, and represent the plaintiff herein, Hawthorne Industrial Products, Inc.

EXHIBIT
A

3.    I have personal knowledge of the facts and statements contained in this affidavit, obtained through my position as counsel of record for Hawthorne. Each of the statements herein is a true and correct statement of fact.

4.    On August 18, 2022, on behalf of Hawthorne Industrial Products, Inc., the law firm Pusateri, Johnston, Guillot and Greenbaum, LLC filed a Verified Complaint against Hawin Shipping Limited ("Hanwin"), in which it was alleged that Hanwin chartered the M/V INDIGO SPICA pursuant to a charter party on or about April 22, 2022, and further that Hanwin subsequently breached the charter by failing to properly load, stow, and secure the cargo, causing damages to Hawthorne's cargo. *See* Verified Complaint, Civil Action 2:22-02724, Rec. Doc. 1.

5.    At the time of filing and at present, Hanwin was a foreign entity and was not found within the Eastern District of Louisiana within the meaning of Rule B of the Supplemental Rules for Certain Admiralty Claims of the Federal Rules of Civil Procedure ("Admiralty Rule B"). Accordingly, at the time of filing its Verified Complaint Hawthorne further moved this Honorable Court for an order authorizing the issuance of writs of attachment pursuant to Admiralty Rule B seeking the attachment and garnishment of all property of Hanwin within the territorial jurisdiction of the United Stated District Court for the Eastern District of Louisiana. *See* Motion for Order Authorizing the Issuance of a Writ of Attachment, Civil Action 2:22-02724, Rec. Doc. 2. Hawthorne's Motion for Order Authorizing the Issuance of a Writ of Attachment was granted on August 19, 2022. *See* Order, Civil Action 2:22-02724, Rec. Doc. 6.

6.    Also on August 19, 2022, pursuant to the aforementioned Order granting Hawthorne's Motion for Admiralty Rule B writs, the Clerk of Court of the Eastern District of Louisiana issued a Writ of Foreign Attachment commanding the attachment of all property of

Hanwin in the hands of M/V INDIGO SPICA, IMS Maritime SA, and/or IMECS Co. Ltd., as garnishees. *See* Writ of Foreign Attachment, Civil Action 2:22-02724, Rec. Doc. 9.

7.      Because the property to be attached was neither a vessel nor tangible property on board a vessel, Hawthorne further moved pursuant to Admiralty Rule B(2)(d) that Aaron Greenbaum be appointed as process server for the purpose of serving the aforementioned writs on the garnishees. *See* Motion for Appointment of Special Process Server, Civil Action 2:22-02724, Rec. Doc. 5. Hawthorne's motion to appoint Mr. Greenbaum was granted on August 19, 2022. *See* Order, Civil Action 2:22-02724, Rec. Doc. 8.

8.      On August 19, 2022, Stephen Marshall Fant served the aforementioned writ of attachment, together with Hawthorne's Verified Complaint, a summons, and copies of all motion and orders filed as of that date on the Master of the garnishee M/V INDIGO SPICA. *See* Return of Service, Civil Action 2:22-02724, Rec. Doc. 10.

9.      On August 22, 2022, Hawthorne moved this Honorable Court for an order authorizing the issuance of additional writs of attachment to Revelle Shipping Agency, Inc., Coastal Cargo Company, LLC, and Blue Water Shipping Company as garnishees. *See* Request for Issuance of Additional Writ of Maritime Attachment and Garnishment, Civil Action 2:22-02724, Rec. Doc. 11. The Clerk of Court of the Eastern District of Louisiana issued the additional writs on August 23, 2022. *See* Writs, Civil Action 2:22-02724, Rec. Docs. 14-16.

10.     In response to the Writ of Foreign Attachment served on Hanwin, Hanwin made a restricted appearance according to Supplemental Admiralty Rule E(8) claiming an interest in the attached or garnished property and requested a hearing at which Hawthorne be required to show why the attachment should not be vacated. *See* Restricted Appearance of Hanwin Shipping Limited, Civil Action 2:22-02724, Rec. Doc. 12.

11.     On August 23, 2022, Timothy B. Couch served the aforementioned writ of attachment, together with Hawthorne's Verified Complaint, a summons, and copies of all motion and orders filed as of that date on garnishee Revelle Shipping Agency, Inc. *See* Affidavit of Service, Civil Action 2:22-02724, Rec. Doc. 20.

12.     On August 23, 2022, Timothy B. Couch served the aforementioned writ of attachment, together with Hawthorne's Verified Complaint, a summons, and copies of all motion and orders filed as of that date on garnishee Blue Water Shipping Company. *See* Affidavit of Service, Civil Action 2:22-02724, Rec. Doc. 21.

13.     On August 23, 2022, Timothy B. Couch served the aforementioned writ of attachment, together with Hawthorne's Verified Complaint, a summons, and copies of all motion and orders filed as of that date on garnishee Coastal Cargo Company. *See* Affidavit of Service, Civil Action 2:22-02724, Rec. Doc. 22.

14.     In response to the Writ of Foreign Attachment and Garnishment served on Coastal Cargo Company, Coastal Cargo Company represented that it had in its possession funds belonging to Hanwin in the amount of $51,556.06 at the time the writ was served. *See* Answers to Plaintiff Hawthorne Industrial Products, Inc.'s Garnishment Interrogatories to Coastal Cargo Company, LLC, a true and correct copy of which is attached as Exhibit "A-1".

15.     In response to the Writ of Foreign Attachment and Garnishment served on Revelle Shipping Agency, Revelle Shipping Agency answered that it had in its possession funds belonging to Hanwin in the approximate amount of $42,000. *See* Revelle Shipping Agency's Objections and Answers to Garnishment Interrogatories, a true and correct copy of which is attached as Exhibit "A-2". Pursuant to Admiralty Rule B, the attachment of property of Hanwin in the hands of a

garnishee within this district constituted notice of suit to Hanwin and perfected jurisdiction over Hanwin up to the value of the attached property.

16.     In response to the Writ of Foreign Attachment and Garnishment served on M/V INDIGO SPICA, IMS Maritime SA, and IMECS Co. Ltd., local counsel for Hanwin answered that the M/V INDICO SPICA had in its possession bunkers VLSFO 353.110 mt and LSMGO 113.26.00 mt belonging to Hanwin. *See* Answers to Interrogatories of Hawthorne Industrial Products, Inc. by M/V INDIGO SPICA, IMS Maritime SA, and IMECS Co Ltd., a true and correct copy of which is attached as Exhibit "A-3". Pursuant to Admiralty Rule B, the attachment of property of Hanwin in the hands of a garnishee within this district constituted notice of suit to Hanwin and perfected jurisdiction over Hanwin up to the value of the attached property.

17.     On August 25, 2022, Hanwin filed a Motion to Vacate, the hearing of which was August 26, 2022. *See* Motion for Emergency Hearing to Release Writs of Maritime Attachment & Garnishment, or in the Alternative, to Set Security, Civil Action 2:22-02724, Rec. Doc. 26.

18.     The Court granted Hanwin's Motion and directed Hanwin to post security in the amount of $360,000.00, to be held in escrow in the trust account of Hanwin's local counsel. Rec. Doc. 32.

19.     Admiralty Rule B(2) states that "[n]o default judgment may be entered except upon proof-which may be by affidavit – that: (a) the complaint, summons, and process of attachment and garnishment have been served on the defendant in a manner authorized by Rule 4; (b) the plaintiff or the garnishee has mailed to the defendant the complaint, summons, and process of attachment garnishment, using any form of mail requiring a return receipt; or (c) the plaintiff or the garnishee has tried diligently to give notice of the action to the defendant but could not do so."

20.     For purposes of notice compliance with Admiralty Rule B(2), on December 22, 2022, I sent by Federal Express copies of the Verified Complaint, Writs of Foreign Attachment issued to garnishees, Affidavits of Service on Garnishees, Summons, and Waiver of Service of Summons Form to Hanwin at its registered addresses in London, England and Shanghai, China, thereby providing the required notice to Hanwin. A true and correct copy of the notice correspondence dated December 22, 2022 (hereinafter the "Notice Correspondence"), and delivery confirmations are attached as Exhibit "A-4".

21.     The Notice Correspondence and accompanying pleadings were delivered to Hanwin at Dept 906, 196 High Road, Wood Green, London, United Kingdom N22 8HH, on December 28, 2022, and were signed for by "G. Gazel" at the "Receptionist/Front Desk", whose signature page is included in Exhibit A-4.

22.     The Notice Correspondence and accompanying pleadings were delivered to Hanwin at Room 802, Magnolia Plaza, No. 777 Hongqiao Road, Shanghai, China on January 4, 2023, and were signed for by "S. Qiantai" at the "Receptionist/Front Desk." See Exhibit A-4.

23.     A true and correct copy of the records confirming that the addresses to which Hawthorne directed the notice documents are that of Hanwin are attached as Exhibit "A-5".

24.     The notice correspondence of December 22, 2022, and accompanying pleadings were provided via email on December 22, 2022, to counsel of record for Hanwin, a true and correct copy of which is attached as Exhibit "A-6".

25.     Local counsel for Hanwin filed a Motion to Withdraw as Counsel of Record, which the Court granted on March 29, 2023. *See* Rec. Docs. 42 and 46.

26.   On April 4, 2023, this Court ordered local counsel for Hanwin to deposit into the Court's Registry funds totaling $455,578.01 as security for Hawthorne's claims against Hanwin. *See* Order, Rec. Doc 50.

27.   Despite service via attachment and garnishment under Admiralty Rule B and notice as required under Admiralty Rule B(2), via Federal Express delivery and via correspondence to Hanwin's counsel of record, Hanwin has not filed an answer or otherwise taken any steps to defend Hawthorne's lawsuit despite expiration of the deadline for doing so.

28.   Accordingly, Hawthorne is entitled to entry of default against Hanwin.

29.   Because there is no dispute as to Hawthorne's entitlement to those funds currently sequestered in the Court's Registry, default and partial judgment in the amount of $455,578.01 should be entered as to Hanwin. Doing so will advance the litigation and resolve entirely the involvement of the garnishees.

30.   The above and foregoing are true and correct to the best of my knowledge, information and belief.

_____
Aaron B. Greenbaum


SWORN TO AND SUBSCRIBED
BEFORE ME, THIS _3rd_ DAY OF
NOVEMBER 2023

_____
NOTARY PUBLIC

Shelia R. Tolar
Notary Public
Bar No. 40076, Notary ID 181978
State of Louisiana
My commission is for life

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HAWTHORNE INDUSTRIAL | * | CIVIL ACTION |
| PRODUCTS, INC. | | |
| Plaintiff | * | NO. 22-02454 c/w 22-02724 |
| VERSUS | | |
| | * | JUDGE ELDON E. FALLON |
| HANWIN SHIPPING LIMITED | | |
| also known as | * | MAG. JUDGE JANIS VAN MEERVELD |
| HANWIN SHIPPING COMPANY | | |
| LIMITED, SHANGHAI HANYING | * | |
| INTERNATIONAL LOGSITICS CO., or | | |
| CITY EXPANSION LIMITED | * | |
| Defendant | | |
| AND | * | |
| | | |
| M/V INDIGO SPICA, | * | |
| IMS MARITIME SA and | | |
| IMECS CO LTD. | * | PERTAINS TO 22-2724 |
| Garnishees | | |

**************************************

**ANSWERS TO PLAINTIFF HAWTHORNE INDUSTRIAL PRODUCTS, INC.'S GARNISHMENT INTERROGATORIES TO COASTAL CARGO COMPANY, LLC**

NOW COMES, Coastal Cargo Company, LLC ("Coastal"), solely as garnishee and with a full reservation of all rights and defenses, to answer the following Interrogatories served on it by plaintiff, Hawthorn Industrial Products, Inc.

**INTERROGATORY NO. 1:**

Describe any relationship that the Garnishee has, or has had, with HANWIN SHIPPING LIMITED also known as HANWIN SHIPPING COMPANY LIMITED, SHANGHAI HANYING INTERNATIONAL LOGISTICS CO., or CITY EXPANSION LIMITED (together, "Hanwin").

**ANSWER:**

Coastal objects to this interrogatory as vague and overbroad. Subject to that objection, Coastal has at times been hired to perform stevedoring services on vessels chartered by a Hanwin

**EXHIBIT**

**A-1**

entity through that entity's agent, American Shipping & Chartering, Inc., or through local shipping agencies.

**INTERROGATORY NO. 2:**

Identify all accounts, amounts, property, or anything of value payable to or on behalf of Hanwin.

**ANSWER:**

At the time Coastal was served with the garnishment interrogatories, it was holding $51,556.06 in funds for stevedoring services for a Hanwin entity that had not yet been performed, which funds could arguably be considered as belonging to that Hanwin entity.

**INTERROGATORY NO. 3:**

Identify any agreement or contract which you, your affiliates and/or subsidiaries or agents have, or have had, involving Hanwin, its agents, affiliates or subsidiaries.

**ANSWER:**

Coastal objects to this interrogatory as vague and overbroad. Subject to that objection, Coastal does not have a standing contract with any Hanwin entity. Coastal has at times been hired to perform stevedoring services on vessels chartered by a Hanwin entity through that entity's agent, American Shipping & Chartering, Inc., or through local shipping agencies, by submitting quotes for services to be provided with respect to a specific vessel. Performance of the services constitutes acceptance of the quoted terms.

**INTERROGATORY NO. 4:**

State whether anyone associated with the Garnishee has notified Hanwin of the litigation from which this garnishment action stemmed and, if so, identify the individual(s) making the notification and the individual(s) notified.

**ANSWER:**

No.

**INTERROGATORY NO. 5:**

For each parent, subsidiary, and/or related corporation of the Garnishee, identify all individuals at each such parent, subsidiary, and/or related corporation with whom or which Hanwin has communicated including, but not limited to, each contact's name, job title, telephone number, cell phone number, fax number, mailing address, and e-mail address.

**ANSWER:**

Coastal objects to this interrogatory as overbroad and irrelevant. Subject to that objection, Coastal's dealings have all been with American Shipping & Chartering and/or local agencies, and Coastal has not communicated directly with any Hanwin entity.

**INTERROGATORY NO. 6:**

Identify all contacts you have, whether directly or through any agent or attorney, at Hanwin, including, but not limited to, each contact's name, job title, telephone number, cell phone number, fax number, mailing address, and e-mail address.

**ANSWER:**

Lutz Knickrehm at American Shipping, and recently Dale Revelle and Barbara Weaver at Revelle Shipping Agency, Inc.

**INTERROGATORY NO. 7:**

Describe in detail all property, tangible or intangible, including any marine fuel ("bunkers") of or which could be or is claimed or owned by Hanwin which you hold, control, or over which you otherwise have custody.

**ANSWER:**

See Answer to Interrogatory No. 2.

**INTERROGATORY NO. 8:**

Identify any agreements, including but not limited to contracts and charter parties, between you and Hanwin and/or any of Hanwin's subsidiaries effective between January 1, 2022 and the present.

**ANSWER:**

See Answer to Interrogatory No. 3.

**INTERROGATORY NO. 9:**

Identify any communications between you and Hanwin and/or any of Hanwin's subsidiaries or affiliates between January 1, 2022 and the present.

**ANSWER:**

Coastal objects to this interrogatory as overbroad, unduly burdensome and irrelevant. Subject to that objection, see Answer to Interrogatory No. 5.

**INTERROGATORY NO. 10:**

Identify any invoices issued to Hanwin and/or any of Hanwin's agents or subsidiaries by you between January 1, 2022 and the present.

**ANSWER:**

Coastal objects to this interrogatory as overbroad, unduly burdensome and irrelevant.

**INTERROGATORY NO. 11:**

Describe in detail all property, tangible or intangible, including marine fuel ("bunkers"), of Hanwin which you hold, control, or over which you otherwise have custody.

**ANSWER:**

See Answer to Interrogatory No. 2.

**INTERROGATORY NO. 11:**

Identify the amount in tons of marine fuel ("bunkers") owned by or purchased by Hanwin that is currently aboard the INDIGO SPICA.

**ANSWER:**

Coastal does not have this information.

**INTERROGATORY NO. 12:**

Identify the amount in tons of marine fuel ("bunkers") owned by or purchased by Hanwin that is currently aboard any vessel owned, chartered, or managed by Garnishee, and identify such vessel by name and IMO number.

**ANSWER:**

None

**INTERROGATORY NO. 13:**

For any vessel identified in response to Interrogatory No. 12, identify whether those vessels are expected to call at a U.S. port within the next 90 days, and if so, identify such port city.

**ANSWER:**

The only vessels Coastal owns are crane barges located in the Port of New Orleans.

**INTERROGATORY NO. 14:**

Identify any charterers or sub-charterers of the vessel INDIGO SPICA as of the date of service of these Interrogatories.

**ANSWER:**

Coastal does not have this information.

**INTERROGATORY NO. 15:**

Identify any bank account information of Hanwin and/or any of Hanwin's agents or subsidiaries, including bank name, address, routing number, and account number, pertaining to any payments made by Hanwin and/or any of Hanwin's agents or subsidiaries to you between January 1, 2022 and the present.

**ANSWER:**

Coastal objects to this interrogatory as overbroad, unduly burdensome and irrelevant.

**INTERROGATORY NO. 16:**

Other than for the INDIGO SPICA, identify and describe any contracts in place or in negotiation for charter of other vessels with Hanwin and identify such vessels.

**ANSWER:**

Coastal does not have this information.

**INTERROGATORY NO. 17:**

For any vessel identified in response to Interrogatory No. 16, identify whether those vessels are expected to call at a U.S. port within the next 90 days, and if so, identify such port city.

**ANSWER:**

See Answer to Interrogatory No. 16.

**INTERROGATORY NO. 18:**

Describe whether Hanwin was required to provide proof of insurance coverage to Garnishee concerning charter or sub-charter of any vessel owned, chartered, or managed by Garnishee, including but not limited to the INDIGO SPICA, and if so, identify the name(s) of the insurance underwriter or club which provides such insurance.

**ANSWER:**

See Answer to Interrogatory No. 12.

Respectfully submitted:

MURPHY, ROGERS, SLOSS,
 GAMBEL & TOMPKINS

*/s/ Peter B. Sloss*
_____

Peter B. Sloss (#17142)
psloss@mrsola.com
Timothy D. DePaula (#31699)
tdepaula@mrsnola.com
701 Poydras Street
Suite 400, Hancock Whitney Center
New Orleans, LA  70139
Telephone:  (504) 523-0400
Facsimile:  (504) 523-5574
*Attorneys for Coastal Cargo Company, LLC*

4861-4229-4835, v. 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HAWTHORNE INDUSTRIAL PRODUCTS, INC.** | **NO.: 22-cv-02724 c/w 22-cv-02454** |
| *Plaintiff* | **HON. ELDON E. FALLON** |
| **VERSUS** | **MAGISTRATE JUDGE:** |
| **HANWIN SHIPPING LIMITED also known as HANWIN SHIPPING COMPANY LIMITED, SHANGHAI HANYING INTERNATIONAL LOGISTICS CO., or CITY EXPANSION LIMITED,** | **HON. JANIS VAN MEERVELD** *Applies to 22-02724* |
| *Defendants* | |
| **AND** | |
| **M/V INDIGO SPICA, IMS MARITIME SA and IMECS CO LTD** | |
| *Garnishees* | |

## REVELLE SHIPPING AGENCY'S OBJECTIONS AND ANSWERS TO GARNISHMENT INTERROGATORIES

NOW COMES, Garnishee, Revelle Shipping Agency ("Revelle"), for the limited purpose of asserting its objections and providing responsive information to the garnishment interrogatories served by Hawthorne Industrial Products, Inc., and provides the following Objections and Answers to Garnishment Interrogatories.

## INTERROGATORY NO. 1:

Describe any relationship that the Garnishee has, or has had, with HANWIN SHIPPING LIMITED also known as HANWIN SHIPPING COMPANY LIMITED, SHANGHAI HANYING INTERNATIONAL LOGISTICS CO., or CITY EXPANSION LIMITED (together, "Hanwin").

1

**EXHIBIT**
**A-2**
_____

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B. Subject to this objection, Revelle has acted as an independent ship agent of Hanwin.

**INTERROGATORY NO. 2:**

Identify all accounts, amounts or anything of value payable to, or on behalf of, Hanwin.

**ANSWER:**

Revelle currently has approximately $42,000 in funds that are not currently earmarked for vendors, some of which has been allocated to cover legal fees associated with responding to these interrogatories.

**INTERROGATORY NO. 3:**

Identify any agreement or contract which you, your affiliates and/or subsidiaries or agents have, or have had, involving Hanwin, its agents, affiliates or subsidiaries.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B. Subject to this objection, there are no such agreement or contracts.

**INTERROGATORY NO. 4:**

State whether anyone associated with the Garnishee has notified Hanwin of the litigation from which this garnishment action stemmed and, if so, identify the individual(s) making the notification and the individual(s) notified.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of

Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B. Subject to this objection, Revelle, as an independent ship agent, has disclosed the litigation to its principal.

**INTERROGATORY NO. 5:**

For each parent, subsidiary, and/or related corporation of the Garnishee, identify all individuals at each such parent, subsidiary, and/or related corporation with whom or which Hanwin has communicated including, but not limited to, each contact's name, job title, telephone number, cell phone number, fax number, mailing address, and e-mail address.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B.  Subject to this objection, Dale Revelle communicates with Hanwin. He can be contacted through undersigned counsel.

**INTERROGATORY NO. 6:**

Identify all contacts you have, whether directly or through any agent or attorney, at Hanwin, including, but not limited to, each contact's name, job title, telephone number, cell phone number, fax number, mailing address, and e-mail address.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B. Subject to this objection, Revelle's contact is identified as "Nicole" but her legal name is not known to Revelle. Her phone number is 011-86-180-1923-6829 and her email address is nicole@hanwinshipping.com.

**INTERROGATORY NO. 7:**

Describe in detail all property, tangible or intangible, including any marine fuel ("bunkers") of or which could be or is claimed or owned by Hanwin which you hold, control, or over which you otherwise have custody.

**ANSWER:**

Apart from the funds identified in Answer to Interrogatory No. 2, none.

**INTERROGATORY NO. 8:**

Identify any agreements, including but not limited to contracts and charter parties, between you and Hanwin and/or any of Hanwin's subsidiaries effective between January 1, 2022 and the present.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B. Subject to this objection, none.

**INTERROGATORY NO. 9:**

Identify any communications between you and Hanwin and/or any of Hanwin's subsidiaries or affiliates between January 1, 2022 and the present.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B.

**INTERROGATORY NO. 10:**

Identify any invoices issued to Hanwin and/or any of Hanwin's agents or subsidiaries by you between January 1, 2022 and the present.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B.

**INTERROGATORY NO. 11:**

Describe in detail all property, tangible or intangible, including marine fuel ("bunkers"), of Hanwin which you hold, control, or over which you otherwise have custody.

**ANSWER:**

Apart from the funds identified in Answer to Interrogatory No. 2, none.

**INTERROGATORY NO. 11:**

Identify the amount in tons of marine fuel ("bunkers") owned by or purchased by Hanwin that is currently aboard the INDIGO SPICA.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B. Subject to this objection, Revelle is not in possession of responsive information.

**INTERROGATORY NO. 12:**

Identify the amount in tons of marine fuel ("bunkers") owned by or purchased by Hanwin that is currently aboard any vessel owned, chartered, or managed by Garnishee, and identify such vessel by name and IMO number.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B. Subject to this objection, Revelle is not in possession of responsive information.

**INTERROGATORY NO. 13:**

For any vessel identified in response to Interrogatory No. 12, identify whether those vessels are expected to call at a U.S. port within the next 90 days, and if so, identify such port city.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B. Subject to this objection, Revelle is not in possession of responsive information.

**INTERROGATORY NO. 14:**

Identify any charterers or sub-charterers of the vessel INDIGO SPICA as of the date of service of these Interrogatories.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B. Subject to this objection, Revelle is not in possession of responsive information.

**INTERROGATORY NO. 15:**

Identify any bank account information of Hanwin and/or any of Hanwin's agents or subsidiaries, including bank name, address, routing number, and account number, pertaining to any payments made by Hanwin and/or any of Hanwin's agents or subsidiaries to you between January 1, 2022 and the present.

**ANSWER:**

In pre-payment of its services as an independent agent, Revelle has received wire transfers from Hanwin involving Bank of America, N.A., OCBC Wing Hang Bank (China) Limited, and DBS Bank (Hong Kong).

**INTERROGATORY NO. 16:**

Other than for the INDIGO SPICA, identify and describe any contracts in place or in negotiation for charter of other vessels with Hanwin and identify such vessels.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B.

**INTERROGATORY NO. 17:**

For any vessel identified in response to Interrogatory No. 16, identify whether those vessels are expected to call at a U.S. port within the next 90 days, and if so, identify such port city.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B.

**INTERROGATORY NO. 18:**

Describe whether Hanwin was required to provide proof of insurance coverage to Garnishee concerning charter or sub-charter of any vessel owned, chartered, or managed by Garnishee, including but not limited to the INDIGO SPICA, and if so, identify the name(s) of the insurance underwriter or club which provides such insurance.

**ANSWER:**

Revelle objects to this interrogatory as not pertaining to the debts, credits, or effects of Hanwin in the garnishee's hands and, therefore, beyond the scope of Supplemental Rule B. Subject to this objection, no proof of insurance was required.

Respectfully submitted:

MOULEDOUX, BLAND, LEGRAND & BRACKETT

s/Trevor M. Cutaiar
TREVOR M. CUTAIAR (#33082)
ANDRE´ J. MOULEDOUX (#9778)
701 Poydras Street, Suite 600
New Orleans, LA 70139
Tel: (504) 595-3000
Fax: (504) 522-2121
Email: tcutaiar@mblb.com

**Attorneys for Revelle Shipping Agency**

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2022, I emailed the foregoing to counsel for Plaintiff.

s/Trevor M. Cutaiar

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **HAWTHORNE INDUSTRIAL** | § | **CIVIL ACTION NO.: 2:22-cv-02724** |
| **PRODUCTS, INC.** | § | **c/w 2:22-cv-2454** |
| | § | |
| **Plaintiff** | § | **APPLIES TO 2:22-cv-02724** |
| | § | |
| **VERSUS** | § | **Section "L" (1)** |
| | § | |
| **HANWIN SHIPPING LIMITED** | § | **DISTRICT JUDGE** |
| **also known as** | § | **HON. IVAN L.R. LEMELLE** |
| **HANWIN SHIPPING COMPANY** | § | |
| **LIMITED** | § | **MAGISTRATE JUDGE:** |
| **SHANGHAI HANYING INTERNATIONAL** | § | **HON. JANIS VAN MEERVELD** |
| **LOGISTICS CO.,** | § | |
| **or CITY EXPANSION LIMITED,** | § | |
| | § | |
| **Defendants** | § | |
| | § | |
| **AND** | § | |
| | § | |
| **M/V INDIGO SPICA** | § | |
| **IMS MARITIME SA and** | § | |
| **IMECS CO LTD** | § | |
| | § | |
| **Garnishees** | § | |

---

### ANSWERS TO INTERROGATORIES OF HAWTHORNE INDUSTRIAL PRODUCTS, INC. BY M/V INDIGO SPICA, IMS MARITIME SA AND IMECS CO LTD

Garnishees, M/V INDIGO SPICA *in* rem, IMS Maritime SA and IMECS Co Ltd (hereinafter "Garnishees" or "IMS"), by and through their undersigned attorneys, Chaffe McCall, LLP, hereby responds to the Interrogatories of Hawthorne Industrial Products, Inc. ("Hawthorne"), upon information and belief, and subject to the following General Objections, as follows:

### GENERAL STATEMENT

In accordance with the Federal Rules of Civil Procedure and the practice followed in this Court, these responses have been prepared by counsel on the basis of the information and materials

**EXHIBIT**

**A-3**

that have been obtained or produced. IMS reserves the right to amend and supplement these responses as and when different or additional information may be obtained.

IMS's responses and objections are based upon information now known.  IMS has not completed its investigation of the facts of this action and therefore reserves the right to amend, modify and/or supplement the objections and responses in accordance with the Federal Rules of Civil Procedure, the orders of the Court and/or any order subsequently entered in this matter.

## GENERAL OBJECTIONS

1.      IMS objects to Hawthorne's Interrogatories to the extent they seek to impose requirements on PSI that are beyond the scope of discovery provided for by Fed. R. Civ. P. 34.

2.      IMS objects to Hawthorne's Interrogatories to the extent they seek information which is subject to the attorney-client or attorney work product privileges.

3.      IMS objects to Hawthorne's Interrogatories to the extent that they seek information and/or documents not within IMS's possession, custody or control, or already within the possession, custody or control of IMS, and, are therefore, unduly burdensome, oppressive, harassing and vexatious and go beyond the limits permitted by the Federal Rules of Civil Procedure.

4.      IMS objects to each of Hawthorne's Interrogatories to the extent that it seeks disclosure of work product, opinions, mental impressions, conclusions or legal theories of IMS and/or its counsel and other representatives.

5.      IMS objects to each Request to the extent that it is vague, ambiguous or confusing, rendering it incapable of being answered.

6.      IMS objects to Hawthorne's "Definitions" to the extent they seek to impose requirements on IMS that are beyond the scope of discovery provided for in the Federal Rules of

Civil Procedure, or to the extent they conflict with the definitions in those Rules.  In responding to the Requests, IMS will respond to words using their ordinary dictionary definition.

7.     IMS Objects to Hawthorne's Interrogatories to the extent they are not limited in time, and are therefore overboard and unduly burdensome.

## ANSWERS TO FIRST SET OF INTERROGATORIES

Without waiver of the foregoing General Objections, each of which is incorporated into the following responses, IMS responds as follows:

INTERROGATORY NO. 1:

Describe any relationship that the Garnishee has, or has had, with HANWIN SHIPPING LIMITED also known as HANWIN SHIPPING COMPANY LIMITED, SHANGHAI HANYING INTERNATIONAL LOGISTICS CO., or CITY EXPANSION LIMITED (together, "Hanwin").

**ANSWER TO INTERROGATORY NO. 1:**

**IMS objects to this interrogatory as vague, unlimited in time and scope, overbroad, and to the extent it seeks information that is neither relevant nor reasonably likely to lead to the discovery of evidence that is admissible.  Subject to and without waiving said objections, IMS currently has no direct contract with Hanwin.  During the relevant voyage, IMS chartered the M/V INDIGO SPICA to M/S Dragon Carriers Limited.  Upon information and belief, Dragon Carriers sub chartered the vessel to Hanwin.**

INTERROGATORY NO. 2:

Identify all accounts, amounts or anything of value payable to, or on behalf of, Hanwin.

**ANSWER TO INTERROGATORY NO. 2:**

**IMS objects to this interrogatory as vague, unlimited in time and scope, overbroad, and to the extent it seeks information that is neither relevant nor reasonably likely to lead to the discovery of evidence that is admissible.  Subject to and without waiving said objections, IMS has no information responsive to this Interrogatory.**

INTERROGATORY NO. 3:

Identify any agreement or contract which you, your affiliates and/or subsidiaries or agents have, or have had, involving Hanwin, its agents, affiliates or subsidiaries.

**ANSWER TO INTERROGATORY NO. 3:**

**IMS objects to this interrogatory as vague, unlimited in time and scope, overbroad, and to the extent it seeks information that is neither relevant nor reasonably likely to lead to the discovery of evidence that is admissible.  Subject to and without waiving said objections, IMS has no agreements or contracts with Hanwin.  See response to Interrogatory No. 1.**

INTERROGATORY NO. 4:

State whether anyone associated with the Garnishee has notified Hanwin of the litigation from which this garnishment action stemmed and, if so, identify the individual(s) making the notification and the individual(s) notified.

**ANSWER TO INTERROGATORY NO. 4:**

**IMS has not directly notified Hanwin of this litigation.  However, it is apparent from the Court's docket that Hanwin is aware of this litigation as Hanwin has appointed counsel who have appeared in this lawsuit.  IMS is also aware from the dockets in the other pending cases related to this action in Baltimore and New Orleans that Hanwin has appointed counsel and is therefore aware of the litigation related to this garnishment action.**

INTERROGATORY NO. 5:

For each parent, subsidiary, and/or related corporation of the Garnishee, identify all individuals at each such parent, subsidiary, and/or related corporation with whom or which Hanwin has communicated including, but not limited to, each contact's name, job title, telephone number, cell phone number, fax number, mailing address, and e-mail address.

**ANSWER TO INTERROGATORY NO. 5:**

**IMS objects to this interrogatory as unlimited in time and scope, overbroad, and to the extent it seeks information that is neither relevant nor reasonably likely to lead to the discovery of evidence that is admissible. Subject to and without waiving said objections, IMS has had no direct contact with Hanwin. Because the vessel was subchartered to Hanwin, the Master of the INDIGO SPICA was required to provide operational details to Hanwin concerning the voyage. That information was provided to Hanwin's Operations Department. Nicole Wu, HANWIN SHIPPING LIMITED, MP: +86-18019236829, MAIL: [nicole@hanwinshipping.com](mailto:nicole@hanwinshipping.com), Group CHTRS PUBLIC [public@hanwinshipping.com](mailto:public@hanwinshipping.com) , Group op [OP@hanwinshipping.com](mailto:OP@hanwinshipping.com).**

INTERROGATORY NO. 6:

Identify all contacts you have, whether directly or through any agent or attorney, at Hanwin, including, but not limited to, each contact's name, job title, telephone number, cell phone number, fax number, mailing address, and e-mail address.

**ANSWER TO INTERROGATORY NO. 6:**

**Garnishees object to Interrogatory to the extent it requests information protected by the attorney-client or attorney work product privileges. Without waiver of the foregoing objection, see response to Interrogatory No. 5.**

INTERROGATORY NO. 7:

Describe in detail all property, tangible or intangible, including any marine fuel ("bunkers") of or which could be or is claimed or owned by Hanwin which you hold, control, or over which you otherwise have custody.

**ANSWER TO INTERROGATORY NO. 7:**

**Upon information and belief, at the time the garnishees were served with these Interrogatories, Hanwin owned the following bunkers aboard the Vessel:  VLSFO 353.110 mt, and LSMGO 113.26.00 mt.**

INTERROGATORY NO. 8:

Identify any agreements, including but not limited to contracts and charter parties, between you and Hanwin and/or any of Hanwin's subsidiaries effective between January 1, 2022 and the present.

**ANSWER TO INTERROGATORY NO. 8:**

**See response to Interrogatory No. 1.**

INTERROGATORY NO. 9:

Identify any communications between you and Hanwin and/or any of Hanwin's subsidiaries or affiliates between January 1, 2022 and the present.

**ANSWER TO INTERROGATORY NO. 9:**

**The only communications Garnishees had with Hanwin related to information as to the Vessel's operations which were communicated from the Vessel to Hanwin.  See response to Interrogatory No. 5.**

INTERROGATORY NO. 10:

Identify any invoices issued to Hanwin and/or any of Hanwin's agents or subsidiaries by you between January 1, 2022 and the present.

**ANSWER TO INTERROGATORY NO. 10:**

**None. See response to Interrogatory No. 1.**

INTERROGATORY NO. 11:

Describe in detail all property, tangible or intangible, including marine fuel ("bunkers"), of Hanwin which you hold, control, or over which you otherwise have custody.

**ANSWER TO INTERROGATORY NO. 11:**

**See response to Interrogatory No. 7.**

INTERROGATORY NO. 11:[sic]

Identify the amount in tons of marine fuel ("bunkers") owned by or purchased by Hanwin that is currently aboard the INDIGO SPICA.

**ANSWER TO INTERROGATORY NO. 11:[sic]**

**See response to Interrogatory No. 7.**

INTERROGATORY NO. 12:

Identify the amount in tons of marine fuel ("bunkers") owned by or purchased by Hanwin that is currently aboard any vessel owned, chartered, or managed by Garnishee, and identify such vessel by name and IMO number.

**ANSWER TO INTERROGATORY NO. 12:**

**See response to Interrogatory No. 7.**

PBH638076.1

INTERROGATORY NO. 13:

For any vessel identified in response to Interrogatory No. 12, identify whether those vessels are expected to call at a U.S. port within the next 90 days, and if so, identify such port city.

**ANSWER TO INTERROGATORY NO. 13:**

**See response to Interrogatory No. 12.**

INTERROGATORY NO. 14:

Identify any charterers or sub-charterers of the vessel INDIGO SPICA as of the date of service of these Interrogatories.

**ANSWER TO INTERROGATORY NO. 14:**

**See response to Interrogatory No. 1.**

INTERROGATORY NO. 15:

Identify any bank account information of Hanwin and/or any of Hanwin's agents or subsidiaries, including bank name, address, routing number, and account number, pertaining to any payments made by Hanwin and/or any of Hanwin's agents or subsidiaries to you between January 1, 2022 and the present.

**ANSWER TO INTERROGATORY NO. 15:**

**Garnishees have no information responsive to Interrogatory No. 15.**

INTERROGATORY NO. 16:

Other than for the INDIGO SPICA, identify and describe any contracts in place or in negotiation for charter of other vessels with Hanwin and identify such vessels.

**ANSWER TO INTERROGATORY NO. 16:**

**None.**

INTERROGATORY NO. 17:

For any vessel identified in response to Interrogatory No. 16, identify whether those vessels are expected to call at a U.S. port within the next 90 days, and if so, identify such port city.

**ANSWER TO INTERROGATORY NO. 17:**

**Not applicable.**

INTERROGATORY NO. 18:

Describe whether Hanwin was required to provide proof of insurance coverage to Garnishee concerning charter or sub-charter of any vessel owned, chartered, or managed by Garnishee, including but not limited to the INDIGO SPICA, and if so, identify the name(s) of the insurance underwriter or club which provides such insurance.

**ANSWER TO INTERROGATORY NO. 18:**

**No.**

Respectfully submitted,

CHAFFE MCCALL LLP

/s/ Alexander J. DeGiulio
Derek A. Walker, TA, #13175
Alexander J. DeGiulio, #38184
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone: (504) 585-7000
Email: Walkerd@chaffe.com
Email: Alex.DeGiulio@chaffe.com
***Attorneys for M/V INDIGO SPICA, IMS
Maritime SA and IMECS Co Ltd***

OF COUNSEL:

Kevin G. O'Donovan
Palmer Biezup and Henderson, LLP
190 N. Independence Mall West
Suite 401
Philadelphia, Pa 19106
***Attorney for M/V INDIGO SPICA,
IMS Maritime SA and IMECS Co Ltd***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on September 9, 2022 a copy of the Garnishees' Responses to

Interrogatories was served via e-mail on the following counsel of record.

Aaron B. Greenbaum T.A.
Salvador J. Pusateri
Shelia R. Tolar
PUSATERI, JOHNSTON, GUILLOT &GREENBAUM, LLC
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
*Counsel for Plaintiff*

David Boies Sharpe
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street
Suite 2775
New Orleans, LA 70130
*Counsel for Hanwin*

Peter Brooks Sloss
Murphy, Rogers, Sloss & Gambel
One Shell Square
701 Poydras Street
Suite 400
New Orleans, LA 70139
*Counsel for Coastal Cargo*

CHAFFE MCCALL LLP

/s/ Alexander J. DeGiulio_____
Alexander J. DeGiulio



**PUSATERI, JOHNSTON,**
**GUILLOT & GREENBAUM**
ATTORNEYS AT LAW

1100 Poydras Street, Suite 2250
New Orleans, LA 70163
T: (504) 620-2500 F: (504) 620-2510
www.PJGGLAW.com

AARON.GREENBAUM@PJGGLAW.COM
DIRECT: 504-620-2370

December 22, 2022

**VIA FEDERAL EXPRESS**

Hanwin Shipping Limited
Room 802, Magnolia Plaza
No. 777 Hongqiao Road
Shanghai, China

**VIA FEDERAL EXPRESS**

Hanwin Shipping Limited
Dept 906, 196 High Road, Wood Green
London, United Kingdom N22 8HH

Re:   *Hawthorne Industrial Products, Inc. v. Hanwin Shipping Limited, et al*
      USDC, EDLA Civil Action No.: 2:22-cv-02724
      **Our File:  1148-20936**

Dear Hanwin Shipping Limited:

We represent Plaintiff, Hawthorne Industrial Products Inc.'s in the above-referenced suit against Hanwin Shipping Limited, concerning damage to cargo while aboard the TAC IMOLA and INDIGO SPICA. Suit has been filed in the United States District Court for the Eastern District of Louisiana and the matter has been assigned to U.S. District Judge Eldon E. Fallon.

Please find enclosed the following pleadings:

1. Verified Complaint (Rec. Doc. 1);
2. Writ of Foreign Attachment issued to garnishee M/V INDIGO SPICA (Rec. Doc. 9);
3. Writ of Foreign Attachment issued to garnishee Revelle Shipping Agency, Inc. (Rec. Doc. 14);
4. Writ of Foreign Attachment issued to garnishee Coastal Cargo Company, LLC (Rec. Doc. 15);
5. Return of Service – M/V INDIGO SPICA (Rec. Doc. 10);
6. Affidavit of Service – Revelle Shipping Agency, Inc. (Rec. Doc. 20);
7. Affidavit of Service – Coastal Cargo Company, LLC (Rec. Doc. 21);
8. Summons as to Hanwin Shipping Limited (Rec. Doc. 25); and
9. Waiver of Service of Summons Form

**EXHIBIT**

**A-4**

Hanwin Shipping Limited
December 22, 2022
Page 2

      We request that you please execute the Waiver of Service of Summons Form and return the original to our firm using the enclosed FedEx return envelope.

Very truly yours,

PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC

Aaron B. Greenbaum

ABG/MAG/hs/#1789151
Enclosures

CC:    Brian Maloney       (Via Email - *maloney@sewkis.com*)
        Bruce Paulson       (Via Email – *paulsen@sewkis.com*)
        David Sharpe        (Via Email - *dsharpe@lawla.com*)

July 18, 2023

Dear Customer,

The following is the proof-of-delivery for tracking number: 770868485471

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | |
| Signed for by: | G.GAZEL | Delivery Location: | |
| Service type: | FedEx International First | | |
| Special Handling: | Deliver Weekday;<br>Direct Signature Required | | WOOD GREEN, LO, |
| | | Delivery date: | Dec 28, 2022 08:41 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 770868485471 | Ship Date: | Dec 22, 2022 |
| | | Weight: | |
| **Recipient:** | | **Shipper:** | |
| WOOD GREEN, LO, GB, | | NEW ORLEANS, LA, US, | |

Signature image is available. In order to view image and detailed information, the shipper or payor account
number of the shipment must be provided.

Thank you for choosing FedEx

December 28, 2022

Dear Customer,

The following is the proof-of-delivery for tracking number: 770868485471

| Delivery Information: | | | |
|---|---|---|---|
| Status: | Delivered | Delivered To: | Receptionist/Front Desk |
| Signed for by: | G.GAZEL | Delivery Location: | 196 HIGH ROAD |
| Service type: | FedEx International First | | |
| Special Handling: | Deliver Weekday; Direct Signature Required | | WOOD GREEN, LO, N228HH |
| | | Delivery date: | Dec 28, 2022 08:41 |

| Shipping Information: | | | |
|---|---|---|---|
| Tracking number: | 770868485471 | Ship Date: | Dec 22, 2022 |
| | | Weight: | 1.0 LB/0.45 KG |

Recipient:
HANWIN SHIPPING LIMITED
DEPT 906
196 HIGH ROAD
WOOD GREEN, LO, GB, N228HH

Shipper:
AARON GREENBAUM, PUSATERI JOHNSTON GUILLOT   GREENB
1100 POYDRAS ST.
2250
NEW ORLEANS, LA, US, 70163



Thank you for choosing FedEx

July 18, 2023

Dear Customer,

The following is the proof-of-delivery for tracking number: 770868633517

| Delivery Information: | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Receptionist/Front Desk |
| **Signed for by:** | S.QIANTAI | **Delivery Location:** | |
| **Service type:** | International Priority | | |
| **Special Handling:** | Deliver Weekday | | SHANGHAI, |
| | | **Delivery date:** | Jan 4, 2023 16:36 |

| Shipping Information: | | | |
|---|---|---|---|
| **Tracking number:** | 770868633517 | **Ship Date:** | Dec 22, 2022 |
| | | **Weight:** | 1.0 LB/0.45 KG |
| **Recipient:** | | **Shipper:** | |
| SHANGHAI, CN, | | NEW ORLEANS, LA, US, | |

| **Reference** | 1148-20936 |
|---|---|

Signature images are not available for display for shipments to this country.

Thank you for choosing FedEx

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### *In Admiralty*

| | | |
|---|---|---|
| Hanwin Shipping Limited, | * | |
| | * | |
| *Plaintiff* | * | |
| | * | |
| *v.* | * | Civil No. 1:22-cv-11182-RWZ |
| | * | |
| Transatlantica Commodities Pte Ltd., | * | **VERIFIED COMPLAINT** |
| Millenary Shipping LP | * | |
| | * | |
| *Defendants, in personam* | * | |
| | * | |
| and | * | |
| | * | |
| | * | |
| The Master of the M/V Tac Imola | * | |
| | * | |
| *Garnishee* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*   \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### FIRST AMENDED VERIFIED COMPLAINT

Plaintiff Hanwin Shipping Ltd., by and through its attorneys Christopher McNally, Todd D. Lochner, and Lochner Law Firm, P.C, file this First Amended Verified Complaint against Transatlantica Commodities Pte Ltd. ('Transatlantica') and Millenary Shipping LP ("Millenary"), including a *quasi in rem* request pursuant to Fed. R. Civ. P. Supplemental Admiralty Rule B, for issuance of writs of maritime attachment and garnishment for property of Defendant Transatlantica which is now or soon will be within the District, including bunkers (fuel) and other provisions aboard the M/V Tac Imola and controlled by the Garnishee, the Master of the M/V Tac Imola,[1]

---

[1] The bunkers that are the subject of this action were ordered to be attached on July 22, 2022 (*see* Dkt. #7) and released pursuant to this Court's July 27, 2022 Order (*see* Dkt. 26), upon the condition that Transatlantica post substitute security in the amount of $564,283.35. Transatlantica alleges this was done on July 28, 2022. Dkt. #29.

-1-

**EXHIBIT**
**A-5**

and for fraudulent conveyance against Transatlantica and Millenary under the Massachusetts Uniform Fraudulent Transfer Act, Mass. Ann. Laws ch. 109A, or in the alternative under the common law of fraudulent conveyances, and states as follows:

## Summary of Action

This action arises from a cargo fire aboard the M/V Tac Imola, which, at the origination of the case was at sea, enroute to Boston, MA, expected to arrive July 20, 2022. The fire was caused by Defendant Transatlantica Commodities Pte Ltd.'s ("Transatlantica's") improper stowage of cargo on the vessel. Due to the cargo fire, Plaintiff Hanwin Shipping Ltd. ("Hanwin") has suffered over $4 million in damages due to additional port charges and delays to unload the fire-damaged cargo. Hanwin brings this Rule B action to attach property owned by Transatlantica which will soon be within the District, specifically bunkers (marine fuel) on board the M/V Tac Imola. Expedited issuance of the writs of attachment is requested, as the M/V Tac Imola is expected to arrive in the District on or around July 20, 2022, and it is uncertain how long it will remain within the District or within the United States.

## Jurisdiction and Venue

1.      This is an action within the Court's admiralty jurisdiction, 28 U.S.C. § 1333, and the Rule B action is designated as an Admiralty and Maritime claim within the meaning of Fed. R. Civ. P. 9(h).

2.      This action is also made pursuant to the Federal Arbitration Act, 9 U.S.C. § 8, to obtain security for a maritime arbitration between the parties pending in London.

---

Hanwin makes this Amended Complaint in order to correct the record and conform the pleadings to recent events, confirming (i) that this action is made in order to obtain security in aid of London arbitration ongoing between the parties, and (ii) to add a cause of action for fraudulent conveyance against Transatlantica and its purported counterparty, Millenary

3.      Venue is proper within this District because the Defendant's property and Garnishee(s) are, or soon will be located and found, within this District.

4.      Defendant cannot be found within the District within the meaning of Supplemental Admiralty Rule B(1)(a) and Local Admiralty Rule LAR(b)(1).

## Parties

5.      Defendant Transatlantica Commodities Pte Ltd. is a Singapore-based company which charters and subcharters ocean-going vessels.

6.      Defendant Millenary Shipping LP is an Irish company engaged in chartering, time-charter operations, freight forwarding and commodity trading.

7.      Plaintiff Hanwin Shipping Limited, is a China-based company operating as an ocean carrier, which chartered the M/V Tac Imola from Transatlantica.

8.      Garnishee is the master of the vessel M/V Tac Imola, currently steaming off the Eastern Seaboard, which vessel currently holds stores belonging to Defendant Transatlantica, namely bunkers (marine fuel) stored in the vessel's tanks.

## Facts

9.      Hanwin and Transatlantica entered into a charter party, on or about November 3, 2021, for Hanwin to charter the bulk carrier cargo ship M/V Tac Imola ("the Vessel").

10.     On or about November 24-25, 2021, the Vessel took on a large load of plywood for carriage to Baltimore, Maryland.

11.     At some point during the voyage, the plywood cargo caught fire as a result of improper stowage, which allowing the cargo to shift and build friction between itself, other cargo, and the Vessel itself.

-3-

12. As a result of the fire, the now-damaged cargo required special handling to discharge from the Vessel. The Vessel has had to make unscheduled port calls to discharge portions of the damaged cargo, and port terminals have charged significantly more for the special handling to offload the damaged cargo.

13. Consequently, Hanwin has incurred significant costs to discharge the damaged cargo.

14. The cargo fire was caused by Transatlantica's lack of due diligence in loading, stowing, and securing the cargo.

15. Transatlantica's failure to properly load, stow, and secure the cargo constituted a breach of the charter party between Hanwin and Transatlantica.

16. As a direct, proximate, and foreseeable breach of said failure, Hanwin has suffered and will suffer damages in the amount of approximately $4,179,225.00 in costs.

17. The charter party provides for arbitration of disputes between the parties in London.

18. The London arbitration has recently been initiated, and this action is made to obtain security for the London arbitration.

## COUNT I
## Breach of Maritime Contract

19. Plaintiff Hanwin realleges the above paragraphs of the First Amended Verified Complaint as if fully set forth herein.

20. As set forth above Plaintiff Hanwin entered into a charter party with Defendant Transatlantica to hire the M/V Tac Imola. The charter party was a marine contract, and further imposed contractual liability on Transatlantica for improper stowage of cargo.

21.     As set forth above Defendant Transatlantica breached its maritime contract with Hanwin where it improperly stowed cargo aboard the M/V Tac Imola, causing a cargo fire.

22.     As a direct and proximate result of said cargo fire, Hanwin has suffered and will suffer in excess of $4 million in damages in the form of port charges, fuel consumption, and delays for discharging the damaged cargo.

23.     The damages described are due to Hanwin by Transatlantica under the contract, and remain unpaid.

24.     Wherefore, Hanwin demands judgment for its contract damages as fully set forth below.

## COUNT II
### Application for Maritime Attachment and Garnishment
### Under Supplemental Admiralty Rule B

25.     Plaintiff Hanwin realleges the above paragraphs of the First Amended Verified Complaint as if fully set forth herein.

26.     Defendant Transatlantica cannot be found within the District as defined by Supplemental Admiralty Rule B(1)(a).

27.     Transatlantica is believed to have assets which are in this jurisdiction, or will be within this jurisdiction during the pendency of this action, consisting of vessel stores, including but not limited to bunkers (marine fuel) on board the M/V Tac Imola, payment for bunkers, cash, funds, credits, debts, and/or payments that may be due to Defendant. *See* Exhibit 1, July 8, 2022 Bunker Receipt.

28.     Transatlantica, following the filing of the First Amended Verified Complaint but before service of the writs on the master of the M/V Tac Imola, purported to sell the approximately

$564,283.35 in bunkers aboard the ship in a "wash sale" to avoid attachment. *See* Exhibit 2, Agreement for Sale of Bunkers.

29.     The purported "wash sale" of the bunkers, was an attempt to evade the Marshals' service and jurisdiction of this Court.

30.     Further, the purported transfer was without real consideration and therefore constitutes a fraudulent conveyance in an attempt to evade valid attachment of Transatlantica's property.

31.     Three days after the attempted fraudulent conveyance, Transatlantica contends that it never owned the bunkers at all which it purportedly transferred, thereby compounding the nature of the attempted fraudulent conveyance. *See* Dkt. #23.

32.     Then, Transatlantica revised its story to explain that its contention that it never owned certain bunkers only applied to one of the two fuel products that Transatlantica possessed and continued to use aboard the Vessel (described as 130.8 metric tons of Low Sulfur Marine Gas Oil), but that the other fuel product (described as 534.84 metric tons of Low Sulfur Fuel Oil) was supplied by other parties and that those were the bunkers that were "sold" after it learned of this lawsuit but prior to service of the writ of attachment. *See* Dkt. #27 at 1-2.

33.     These assets are currently within the custody and control of Garnishee, the Master of the M/V Tac Imola, who is or will shortly be present in the District to receive a writ of maritime garnishment and attachment of these assets.

**COUNT III**
**Fraudulent Conveyance under the**
**Massachusetts Uniform Fraudulent Transfer Act**
*Against Transatlantica and Millenary*

34.    Plaintiff Hanwin realleges the above paragraphs of the Verified Complaint as if fully set forth herein.

35.    Transatlantica purported to transfer "the Bunkers belonging to Transatlantica presently aboard the M/V TAC IMOLA" to Millenary in its July 24, 2022 "Agreement for Sale of Bunkers Aboard the M/V TAC IMOLA and Assignment of Voyage Charter Party."  Ex. 2.

36.    Transatlantica did not relinquish possession of the bunkers, which remained aboard the Vessel, for use by the Vessel.

37.    Transatlantica did not relinquish control over the bunkers, which remained aboard the Vessel, for use by the Vessel.

38.    On information and belief, at the time of the transfer Transatlantica and Millenary were well aware of this action; and the transfer was made in order to avoid attachment of the bunkers, prior to service of the writs of attachment.

39.    The purported transfer was of substantially all of Transatlantica's property in the district that are the subject of this action (i.e., the bunkers aboard the TAC IMOLA).

40.    Under the agreement, Transatlantica also purported to assign to Millenary "$568,000 of the proceeds from the present voyage charter party, for the voyage from Boston to Chittagong."

41.    The value of the consideration received by Transatlantica (i.e., Millenary's purported future obligation to pay $564,283.35 within 90 days, for the fuel bunkers that Transatlantica continued to use aboard the vessel) was therefore reasonably equivalent to the value

of the asset transferred (i.e., $568,000 in proceeds from the voyage charter party assigned from Transatlantica to Millenary).

42.      The transfer from Transatlantica to Millenary is fraudulent as to Hanwin as it was made by Transatlantica with actual intent to hinder, delay or defraud Hanwin within the meaning of the Massachusetts Uniform Fraudulent Transfer Act.  Mass. Ann. Laws ch. 109A, § 5.

43.      Hanwin is entitled to avoidance of the purported transfer to the extent necessary to satisfy its claim against Transatlantica (as to be determined in London arbitration), among other rights and remedies against Transatlantica and Millenary as set out under the Massachusetts Uniform Fraudulent Transfer Act, or in the alternative at common law under the law of fraudulent conveyances, all of which rights and remedies are expressly reserved.

WHEREFORE, the Plaintiff, Hanwin Shipping Limited, prays:

a)      That process in due form of law issue against Defendants, citing them to appear and answer under oath all and singular the matters alleged in the First Amended Verified Complaint;

b)      That any arbitral award by the London arbitration be recognized by this Court and judgment on the award be issued in favor of Hanwin in the amount of at least $4,179,225.00, plus pre- and post-judgment interest, costs, attorneys' fees, *custodia legis,* and any other damages this Court deems proper;

c)      That because Defendant cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Defendant's tangible or intangible property or any other

funds held or owed by Garnishee(s), which are due and owing to this Defendant up to and including the principal amount of at least USD $4,179,225.00, plus accrued and accruing interest, to secure the Plaintiff's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

d)       That upon attachment and/or garnishment of property sufficient to secure Hanwin for the London maritime arbitration, the Court stay this case pending the outcome of such arbitration, the award in arbitration to be paid by the security upon recognition of the award by this Court.

e)       That such other and further relief be granted as this Court deems just and proper.

Respectfully Submitted August 11, 2022

/s/ Todd D. Lochner, Esq.

Todd D. Lochner
*Pro Hac Vice*
tlochner@boatinglaw.com
Christopher McNally (BBO # 687998)
cmcnally@boatinglaw.com
Lochner Law Firm, P.C. 91 Main
Street, 4th Floor Annapolis, MD
21401 (443) 716-4400 *Attorneys for
the Plaintiff Hanwin Shipping Limited*

## CERTIFICATE OF SERVICE

I, Todd D. Lochner, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Todd D. Lochner

## VERIFICATION OF COMPLAINT
## Plaintiff Hanwin Shipping Limited

I am a corporate officer of the corporate Plaintiff, Hanwin Shipping Limited.  I have read the foregoing First Amended Verified Complaint and know the contents thereof and the same is true to my own knowledge, except as to the matters therein stated upon information and belief and as to those matters I believe them to be true.

The sources of my information and the grounds of belief as to all matters not stated in the Complaint to be alleged upon my own knowledge are reports made to me by other Employees, Officers, and Directors and the records of the Corporation.  The facts alleged in the foregoing complaint are true and correct to the best of my knowledge and information based upon the records of Hanwin Shipping Limited.

Pursuant to 28 U.S.C. § 1746(1), I certify under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted August 11, 2022

Justin Cao

Title: Vice General Manager

-10-

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
### *In Admiralty*

| | | |
|---|---|---|
| Hanwin Shipping Limited, | * | |
| | * | |
| *Plaintiff* | * | |
| | * | |
| *v.* | * | Civil No. 1:22-cv-11182-RWZ |
| | * | |
| Transatlantica Commodities Pte Ltd., | * | |
| Millenary Shipping LP | * | |
| | * | |
| *Defendants, in personam* | * | |
| | * | |
| and | * | |
| | * | |
| | * | |
| The Master of the M/V Tac Imola | * | |
| | * | |
| *Garnishee* | * | |
| | * | |

* * * * * * * * * * * * * * * *   *   * * * * * * * * * * * * * * * * *

_____

## DECLARATION OF YIN MING
_____

I, YIN MING, pursuant to 28 U.S.C. §1746, declare as follows:

1.      I am the sole director of Plaintiff Hanwin Shipping Limited ("***Hanwin***") in this action.  I am duly authorised by Hanwin to make this Declaration on its behalf.  Save where expressly stated to the contrary, the facts and matters to which I depose in this Declaration are within my own knowledge and are true.  Where the facts and matters deposed to in this Declaration are not within my own knowledge, they are based on the documents Hanwin has in its possession or from the sources indicated below and are true to the best of my knowledge, information, and belief.

2.      I make this Declaration in support of Hanwin's motion for reconsideration of the Court's order dated 24 August 2022 for Hanwin to post countersecurity in the amount of US$988,793.21 (the "***Countersecurity***").

3.      There is now produced and shown to me marked **"YM-1"** a bundle containing true copies of documents to which I shall refer during the course of this Declaration. Refence to page number in this Declaration is reference to the page number in the attached bundle.

4.      As will be made clear in this Declaration, it is inequitable for Hanwin to pay the Countersecurity because:

a) Hanwin's claim is meritorious;

b) The payment of the Countersecurity will cripple Hanwin's finances and stifle Hanwin's meritorious claim; and

c) The payment of the Countersecurity cannot be said to be "*levelling the playing field*" between the parties but will tilt the playing field to the Defendants' favour, in light of the actions of defendant Transatlantica Commodities Pte Ltd. ("***Transatlantica***") to this point.

*A) Hanwin's claim against the Defendants are Meritorious*

5.      I am verily advised and believe that Hanwin's claim in the matter to be stayed in favour of London Arbitration under English law is meritorious. I am advised that this is a factor which the Court should take into account of Hanwin's motion.

6.      As stated in the introduction, I am the sole director of Hanwin. There is now exhibited at pp 1 to 2 a copy of the Hanwin's register of directors.

7.      Pursuant to a charterparty (the "***Charterparty***") dated 3 November 2021 (exhibited at p. 3 to 47) made between Transatlantica Commodities Pte Ltd, as Owner, and Hanwin Shipping Limited, as Charterer, the Owner agreed to charter the m.v. "TAC IMOLA" (the "***Vessel***") to the Charterer and the Charterer agreed to take the Vessel on charter.

2

8.      On around 24 November 2021, pursuant the terms of the Charterparty, the Vessel took on loaded cargoes of plywood and Antboxes in the port of Qing Dao, China, bound for Baltimore, Maryland.  Upon completion of loading, the Vessel departed from Qingdao on 26 November 2021.  The stowage diagram is exhibited at page 48.

9.      The parties' dispute arises from a fire on board the Vessel, which happened on 3 December 2021, merely one week from the date of discharge.  Subsequent investigation suggested that the fire started because of frictional heating between the Antboxes and the Plywood, which points to issues in stowage, lashing, and securing of the cargo.

10.      As a result of the fire, the damaged cargo required special handling to discharge from the Vessel.  The Vessel has had to make unscheduled port calls to discharge portions of the damaged cargo, and port terminals have charged significantly more for the special handling to offload the damaged cargo.  These additional expenses amount to US$4,020,898.44 to date.

11.      Clause 9 of the fixture recap in the Charterparty (page 7) stated that "*arbitration if any in London with English law to apply*."

12.      Clause 8 of the Charterparty (page 11) also provided as follows: "*Charterers are to perform all cargo handling (to load, stow, lash, trim, discharge) at their expense under the supervision **and responsibility** of the Captain.*" (Emphasis added).

13.      I was advised by Hanwin's English lawyers that under English law, the addition of "*and responsibility*" rendered Defendants, being the Owners of the Vessel under the Charterparty, to be liable for negligence in the cargo operations.   The negligence of cargo operations rendered the Vessel unseaworthy, which is again Owners' liability.

14.      On the flipside, Transatlantica's counterclaim alleged that it should be Hanwin who is liable for the negligent cargo operations.  I was advised and verily believe that the

3

burden lies on Transatlantica to supply proof that notwithstanding the clear wordings in Clause 8, the liability of cargo operations fell on Hanwin.

**B) Payment of Countersecurity will stifle Hanwin's Claim**

15.     As a result of the fires on board the Vessel, which was caused by the Defendant's negligence, Hanwin is under serious financial strain.  Simply put, Hanwin has no means to pay the Countersecurity into Court due to the losses accumulated, the escalating legal costs, and the amount of security paid into various jurisdictions, due to Transatlantica's conduct.

16.     As stated at paragraph 9 above, Hanwin has suffered more than US$4 million damages.  The losses stemmed from the significant delay as a result of the fire. The Vessel was originally scheduled to discharge in January 2022, but this was actually only completed in July 2022.  Hanwin has sub-chartered the Vessel out on voyage charters and therefore the Vessel generated no income from January 2022 to July 2022.

17.     On the other hand, Transatlantica still received a significant part of hire payment from Hanwin.  While Hanwin has a meritorious claim against Transatlantica all along, Hanwin had no choice but to continue to pay hire so that Transatlantica would not suspend the service of the Vessel.  From January 2022 to July 2022, Hanwin has paid Defendant US$3,209,574.30 being hire for the use of the Vessel, while the Vessel generated no income for Hanwin in this period.

18.     Further, Hanwin has posted significant amounts of security to secure the release of the properties arrested by Transatlantica on the basis of its counterclaim.  Despite Transatlantica's *prima facie* liability for negligent stowage, Transatlantica has commenced different arrest proceedings in United States and Panama in order to secure their alleged counterclaim.  As a result, Hanwin had no choice but to pay security to secure the release of the properties.  To date, without accounting for the countersecurity, Hanwin has posted

4

US$3,428,479.53 in various actions in the United States and in other jurisdiction, which has caused unprecedented strain on the finances of Hanwin. A breakdown of the sums paid in security are as follows:

| Jurisdiction | Amount (US$) |
|---|---|
| London Arbitration | 800,000.00 |
| D.N.J. Case No. 22-cv-3348 | 195,857.22 |
| E.D. La., Case No. 22-cv-2454 | 400,000.00 |
| S.D. Tex., case no. 22-cv-1983 | 979,893.63 |
| Panama proceedings against M.V. BELKNIGHT | 856,871.46 |
| TOTAL | 3,232,622.31 |

19.     For the London Arbitration and the Defendant's various arrest proceedings in United States and Panama, Hanwin has expended around US$561,399.38 of legal costs to date. Most of the costs of Hanwin's UK lawyers were incurred to deal with the hire dispute with the Defendant and coordinating the various jurisdictions. Even excluding Hanwin's UK Lawyers, the fees in US and Panama alone adds to US$443,245.03. The breakdown of Hanwin's legal fees is as follows

| Item | Amount (US$) |
|---|---|
| UK lawyers | 118,154.35 |
| US lawyers in Massachussets, New York and New Orleans | 419,935.66 |
| Panama Lawyers | 23,309.37 |
| TOTAL | 561,399.38 |

20.     As a result of the above factors, Hanwin's financial resources have been depleted.  Hanwin is a small company with limited resources.  It was able to afford to charter and operate around three vessels, with the subject Vessel being one of them.  The fact that the Vessel generated no income for half a year has therefore severely undermined Hanwin's revenue stream.  Hanwin also owns no real properties or Vessels which can be leveraged for financing.

21.     As of the end of September 2022, the balance of Hanwin's bank account has only US$75,785.62 left, having accounted for all operational expenses. (See page 50 to 55 for Hanwin's updated bank statement from 24 August 2022 the date of the security being ordered up to the date of this Declaration, with translation at page 56 to 60).  I confirm that this is the only bank account of Hanwin.

22.     The statements, identities and bank account numbers of the payor have been redacted as they are commercially confidential information.  However, the nature of the payment can be deduced from the unredacted parts.  Most of the remittance are to/from third parties for payment of hire, freight, towage charges, survey charges and other services.  These are commitments which Hanwin had before the Court made the Order of security.

23.     In the past months, due to the financial strain brought about by the events in this Declaration, Hanwin relied on loans from City Expansion Limited, which is a company owned by my friend and Hanwin's former director, Mr Jiang Chunrong, to sustain its operation.   In September, for example, the Court can see that City Expansion Limited advanced a total of US$500,000.00 to Hanwin's Account on 5 September 2022 to 7 September 2022.  However, that amount is barely sufficient to support Hanwin's operation.  Due to the financial strain on City Expansion Limited, it will be unable to advance further loans to Hanwin.   I crave leave to refer to the Declaration of Jiang Chunrong filed together with this Declaration.

24.     The Company has two shareholders – me and Mr. Cao Ming.  There is exhibited at page 62 Hanwin's certified shareholding chart.  Unfortunately, I cannot afford to advance a loan for the Countersecurity ordered by the Court.  I am a businessman with limited means and I am unable to advance a loan so that Hanwin can meet the order for the Countersecurity.

25.     Hanwin's 1% shareholder, Mr Justin Cao Ming, is an employee of the company and I have confirmed with Mr. Cao that he also does not have any means to lend money for the Countersecurity to be paid.

C)   *Payment of Countersecurity tilt the balance entirely in the Defendant's favour*

26.     I am advised and verily believed that in deciding whether Countersecurity should be paid, the Court would consider whether it will level the playing field of the parties. As will be seen below, the payment of Countersecurity will not level the playing field but will tilt the balance of the dispute entirely in favour of the Defendant.

27.     At present, the balance is already heavily in the Defendant's favour

a)  As stated in paragraph 17, the amount of security securing the Defendant's counterclaim exceeds US$3,428,479.53, while the security of US$564,283.35 paid by the Defendant in this Action is the only amount securing Hanwin's claim;

b)  As stated in paragraph 16, Hanwin received no income for the Vessel since January 2022, while the Defendant have received hire from Hanwin for the use of the Vessel in that period, although such use was only necessitated by Defendant's liability in stowage and securing of the cargo; and

c)  The Defendant still have the means to commence various arrest proceedings in US and Panama, while Hanwin, at its present financial condition, will have difficulty pursuing its claim in the London Arbitration.

7

28.      The above is in stark contrast with the comparative merits of the parties' claims. Hanwin's claim and Transatlantica's counterclaim concerns the same transaction, the liability of which is yet to be determined.

29.      If Hanwin is compelled to pay the Countersecurity notwithstanding this application, the balance will be tilted entirely in the Defendant's favour.  The Defendant's counterclaim will be nearly fully secured by the amount of US$3,428,479.53 already paid into the US and Panama courts and the escrow account, while Hanwin's claim will be entirely unsecured as the security paid in this action will be released.  Alternatively, even if Hanwin was able to scrounge whatever financial resources it had to pay countersecurity, Hanwin will have no financial means to defend the Defendant's counterclaim in the London Arbitration.

30.      I would also ask the Court to be mindful of the fact that Hanwin has been put into this financial situation as a result of Transatlantica's conduct in bringing about numerous proceedings in various jurisdiction and demanding security in various jurisdictions.

### D) Delay of the Motion

31.      I apologize for the delay in taking out this application.  It was originally the intention of Hanwin to attempt to comply with the order of the Court to the best of its abilities. However, as the deadline for payment of the Countersecurity drew near, it became clear that Hanwin was not able to raise additional financial resources to meet the Court's order.  As a result, Hanwin took out the application in hopes that the Court can re-consider the amount of Countersecurity.

### E) Conclusion

32. Hanwin therefore prays to the Court that Hanwin be relieved from complying with the Order to pay the Countersecurity in these proceedings or alternatively reduce the amount of security payable.

8

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: October 12, 2022

_____

**Yin Ming**

_____

**EXHIBIT "YM– 1"**

_____

This is the exhibit marked "**YM-1**" referred to in the DECLARATION OF YIN MING executed on the 12th day of October 2022.

| Item | Description | Date | Page |
|------|-------------|------|------|
| 1. | Hanwin's Register of Director | Undated | 1 to 2 |
| 2. | Charterparty between Hanwin and the Defendant | 3 November 2021 | 3 to 47 |
| 3. | Stowage diagram of the Vessel | Undated | 48 |
| 4. | Hanwin's bank statement from 24 August 2022 to present | Various | 49 to 61 |
| 5. | Hanwin's shareholding diagram | 12 October 2022 | 62 |

## HANWIN SHIPPING LIMITED

### Incorporated in United Kingdom 成立於英國
### Company Number 公司註冊號碼: 8716393

## REGISTER OF DIRECTOR(S) 董事名冊

Page number 第：1/2 頁

| Date of Appointment (y/m/d) 委任日期（年/月/日） | 2013/10/03 | | | | |
|---|---|---|---|---|---|
| Full Name 名稱 | JIANG CHUNRONG 蔣春榮 | | | | |
| Former Name (if applicable) 前稱（如適用） | N/A | | | | |
| Occupation 職業 | ☑ | Merchant 商人 | ☐ | | Corporation 法人團體 |
| Identity Type 證件類別 | ☐ | Identity Card 身份證 | ☑ | Passport 護照 | ☐ Corporation 法人團體 |
| Identification Number / Company Number 證件號碼 / 公司註冊號碼 | E54333469 | | | | |
| Issuing Country / Place of Incorporation 簽發國家 / 註冊地 | CHINA | | | | |
| Nationality 國籍 | CHINESE | | | | |
| Date of Birth / Date of Incorporation 出生日期 / 註冊日期 | 1968/03/11 | | | | |
| Residential / Registered Office Address 住址 / 註冊辦事處地址 | ROOM 101, NO.26, LANE 888, BAODONG ROAD, BAOSHAN DISTRICT, SHANGHAI, CHINA. | | | | |
| Address for the service of document(s) 接收法律文件地址 | Same as above 同上 | | | | |
| Date of Cessation (y/m/d) 終止日期（年/月/日） | 2022/08/19 | | | | |

| Date of Appointment (y/m/d) 委任日期（年/月/日） | 2022/08/19 | | | | |
|---|---|---|---|---|---|
| Full Name 名稱 | CAO MING 曹明 | | | | |
| Former Name (if applicable) 前稱（如適用） | N/A | | | | |
| Occupation 職業 | ☑ | Merchant 商人 | ☐ | | Corporation 法人團體 |
| Identity Type 證件類別 | ☐ | Identity Card 身份證 | ☑ | Passport 護照 | ☐ Corporation 法人團體 |
| Identification Number / Company Number 證件號碼 / 公司註冊號碼 | E06562845 | | | | |
| Issuing Country / Place of Incorporation 簽發國家 / 註冊地 | CHINA | | | | |
| Nationality 國籍 | CHINESE | | | | |
| Date of Birth / Date of Incorporation 出生日期 / 註冊日期 | 1983/11/13 | | | | |
| Residential / Registered Office Address 住址 / 註冊辦事處地址 | ROOM 1604, NO. 36, LANE 88, HUASHI ROAD, XUHUI DISTRICT, SHANGHAI, CHINA. | | | | |
| Address for the service of document(s) 接收法律文件地址 | Same as above 同上 | | | | |
| Date of Cessation (y/m/d) 終止日期（年/月/日） | 2022/09/15 | | | | |

**Administrator Reference 執行人資料**
Name 姓名：SBC INTERNATIONAL 駿業國際
Address 地址：10/F., TOWER A, BILLION CENTRE,
1 WANG KWONG ROAD, KOWLOON BAY,
KOWLOON, HONG KONG
香港九龍九龍灣宏光道 1 號億京中心 A 座 10 樓
Tel 電話：(852) 2507 7219
Fax 傳真：(852) 2507 7225
E-mail 電郵：formation@sbcincorp.com



1

## HANWIN SHIPPING LIMITED

Incorporated in United Kingdom 成立於英國
Company Number 公司註冊號碼: 8716393

## REGISTER OF DIRECTOR(S) 董事名冊

Page number 第 : 2/2 頁

| Date of Appointment (y/m/d)<br>委任日期 (年/月/日) | 2022/09/15 | | | | |
|---|---|---|---|---|---|
| Full Name<br>名稱 | YIN MING<br>殷明 | | | | |
| Former Name (if applicable)<br>前稱 (如適用) | N/A | | | | |
| Occupation<br>職業 | ☑ | Merchant<br>商人 | | ☐ | Corporation<br>法人團體 |
| Identity Type<br>證件類別 | ☐ | Identity Card<br>身份證 | ☑ Passport<br>護照 | ☐ | Corporation<br>法人團體 |
| Identification Number / Company Number<br>證件號碼 / 公司註冊號碼 | E31291887 | | | | |
| Issuing Country / Place of Incorporation<br>簽發國家 / 註冊地 | CHINA | | | | |
| Nationality<br>國籍 | CHINESE | | | | |
| Date of Birth / Date of Incorporation<br>出生日期 / 註冊日期 | 1973/10/17 | | | | |
| Residential / Registered Office Address<br>住址 / 註冊辦事處地址 | ROOM 301- ROOM 302, NO. 4, TIE LU GONG FANG,<br>LIAO YUAN YI CUN, YANGPU DISTRICT, SHANGHAI, CHINA. | | | | |
| Address for the service of document(s)<br>接收法律文件地址 | Same as above 同上 | | | | |
| Date of Cessation (y/m/d)<br>終止日期 (年/月/日) | | | | | |

| Date of Appointment (y/m/d)<br>委任日期 (年/月/日) | | | | | |
|---|---|---|---|---|---|
| Full Name<br>名稱 | | | | | |
| Former Name (if applicable)<br>前稱 (如適用) | | | | | |
| Occupation<br>職業 | ☐ | Merchant<br>商人 | | ☐ | Corporation<br>法人團體 |
| Identity Type<br>證件類別 | ☐ | Identity Card<br>身份證 | ☐ Passport<br>護照 | ☐ | Corporation<br>法人團體 |
| Identification Number / Company Number<br>證件號碼 / 公司註冊號碼 | | | | | |
| Issuing Country / Place of Incorporation<br>簽發國家 / 註冊地 | | | | | |
| Nationality<br>國籍 | | | | | |
| Date of Birth / Date of Incorporation<br>出生日期 / 註冊日期 | | | | | |
| Residential / Registered Office Address<br>住址 / 註冊辦事處地址 | | | | | |
| Address for the service of document(s)<br>接收法律文件地址 | | | | | |
| Date of Cessation (y/m/d)<br>終止日期 (年/月/日) | | | | | |

**Administrator Reference 執行人資料**
Name 姓名： SBC INTERNATIONAL 駿業國際
Address 地址： 10/F., TOWER A, BILLION CENTRE,
1 WANG KWONG ROAD, KOWLOON BAY,
KOWLOON, HONG KONG.
香港九龍九龍灣宏光道 1 號億京中心 A 座 10 樓
Tel 電話： (852) 2507 7219
Fax 傳真： (852) 2507 7225
E-mail 電郵： formation@sbcincorp.com



2

**From:** Oino Shipbrokers Pte. Ltd.
**Date:** 2021-11-03 17:51
**To:** justin
**Subject:** +revised recap+ TAC IMOLA / HANWIN SHIPPING - CLEAN RECAP CP DD 03 NOVEMBER 2021
revised recap
Justin / Chris

Gd evening!

Plsd to draw clean recap

/////
Performing vsl:

MV TAC IMOLA
PANAMA FLAG, BUILT 2021, JIANGMEN NANYANG SHIP ENGINEERING CO.,
LTD./CHINA,
BV CLASS FUEL EFFICIENT,SHALLOW DRAFT, OPEN HATCH BULK CARRIER
ABT. 40,261 MT DEADWEIGHT ON 10.8 M SSW
L.O.A. / BEAM 179.9/30.0 METERS 5 HOLDS/HATCHES -
4 X 30.5 METRIC TONNES CRANES
4 X 12CBM CAP GRABS GUVEN
GRAIN/BALE 50317/49126CBM

AT SEA - SPEED AND CONSUMPTION:

SERVICE SPEED:
LADEN : ABOUT 13.50 KTS ON ABOUT 20.50 MT/DAY IFO
BALLAST : ABOUT 14.00 KTS ON ABOUT 21.50MT/DAY IFO

ECO SPEED:
LADEN : ABOUT 12.00 KTS ON ABOUT 15 MT/DAY IFO
BALLAST : ABOUT 12.50 KTS ON ABOUT 15 MT/DAY IFO

AT PORT:
WORKING / IDLE: ABT 5.2/2.5 MTS IFO

SPEED AND CONSUMPTION ARE GIVEN BASIS UP TO BEAUFORT 4, NO ADVERSE
CURRENT AND DOUGLAS SEA STATE 3.

VESSEL HAS LIBERTY TO USE MDO FOR MANOEUVRING IN NARROW WATERS, CANALS,
RIVERS, STARTING ENGINES AND ON ENTERING/LEAVING PORTS AND ADVERSE
WEATHER OR WHEN THE GENERATOR IS ON LOW LOAD. VESSEL ALSO HAS LIBERTY
TO USE MDO/MGO IN HER MAIN, AUXILIARY ENGINES & BOILER WHEN REQUIRED
BYLOCAL REGULATIONS.

ADA

pls adv full tc particular AS ABV

2
3

inclu baltic 99 questionnaire SENT ELIER BQNAIRE OF SISTER VSL

Pls provide G.A plan,Mid Ship Section, Capacity Plan,TANKTOP STRENGTH,FLOOR
TANKTOP MEASUREMENT : ALL SENT ELIER (FOR SISTER VSL)

for
- Owrs:
Disponent owner/hire beneficiary/Charterers' counter-party:
Transatlantica Commodities Pte Ltd
10 Anson Road No 13-11
International Plaza
Singapore 079903
Company Registration No. 201725180D

HEAD OWS : WILL BE AVAIL once registry cert available

- Chtrs: Hanwin Shipping limited
Registered Company Address:DEPT 906, 196 HIGH ROAD, WOOD GREEN, LONDON,
UNITED KINGDOM N22 8HH Trading Address:ROOM 802, MAGNOLIA PLAZA, NO.777
HONGQIAO ROAD, SHANGHAI, CHINA
Telephone:+86-21-65223326
Fax:+86-21-65222092
email:pubilc@hanwinshipping.com

PART I:
1.vsl's present position, itinerary, name/full style of current agents
EXPECTED TO BE LAUNCHED 11/13 NOV AGW/WP/UCE

2.last ten cgo NIL (VSL NB)

3.last ten ports of call (NIL (VSL NB)
PART II:
1. head owners: full style/tel/fax/e-mail/pic : AS ABV
2. managers: full style/tel/fax/e-mail/pic : AS ABV
3. disp owners(fm 1st to current): AS ABV
4. h.owners p&i club, TO BE ADVISED ONCE KNOWN
disp owners p&i club: LONDON PANDI

5. master's name/crew no. & nationality : REV (BTW FR GUIDANCE ONLY INT CREW
WILL BE CHINESE)

PART III:

-- p&i club: owners g'tee that vsl is covered (including oil pollution & wreck removal) by
a p&i club which is a full member of the international group of p&i clubs association and
will remain so throughout the duration of this c/p.

-- class: owners g'tee that vsl is classed lloyds 100a1 lmc or equivalent and will remain so
throughout the duration of this c/p.

-- owners gtee vsl will not to be sold/scraped before or during this c/p time, also no dry
docking during this c/p duration.
-- owners gtee vsl not black listed by c/p trading countries due to vsl's
age/flag/ownership/manager/operators whatsoever and with ahl/wwf/itf in order.

-- owners gtee that vsl's hatch covers are to be watertight all throughout this charter period and if any hatch cover found defective,same to be rectified at owners'time and exps to independent surveyor's satisfaction.

chtrs hv rights to carry out hose test to all hatches at any time during the c/p duration.

-- owners gtee vsl's holds on dely to be clean swept and washed down by fresh water and dried up so as to receive chtrs intended cgos in all respects, free of salt, loose rust scale and previous cgo residue to surveyor's satisfaction.

if the vsl fails to pass any hold inspection,the whole vsl shud be placed off-hire from the time of rejection until the vsl passes the same inspection again and any exps/damages incurred thereby to be for owners'acct.

-- owners gtee vsl's all certificates and all equipments shall comply with the law and regulations of all the calling ports/countries and remain valid/efficient during this c/p,failure of which due to vessels/owners reason,all loss or damage(including delay) resulting therefrom shall be for owners acct.

-- owners gtee vsl's cranes/derricks/gears/grabs all in good working condition and suitable fr loadg/dischg chtrs intention cgo during this cp .

In the event of breakdown of a crane or cranes by reason of disablement or insufficient power, the hire to be reduced pro-rata for the period of such inefficiency in relation to the number of cranes available. However, should a breakdown of a crane or cranes result in Charterers being unable to work at a particular hatch, then hire is to be reduced pro-rata in relation to the number of hatches workable.

Owners are to pay, in addition the cost of labour affected by the breakdown, either stood off or additionally engaged. If required by the Charterers, the Owners are to bear the cost of hiring shore gear in lieu thereof . but the vessel is to be on-hire whilst such shore appliances are available.

-- owners gtee that vsl's holds are to be clear of any fitting/super structures such as car deck,curtain plates,containerr fittings whatsoever,and it is suitable in every respect for chtrs to load intention cgo and vsl is suitable for grab/bulldozer dischg and dischg at anchorage.

-- owners allow chtrs to disch/release cgo w/o presentation of original bs/l against chtrs single loi in owners p&i club wording with chtrs endorsement only.

ADD: LOI TO BE SIGNED BY DIRECTOR AND STAMPED BY OFF COLORED COMPANY STAMP, OR SIGNED BY AUTH PERSON WITH POA

-- owners allow chtrs to change dischg port against chtrs single loi in owners p&i club wording with chtrs endorsement only.

ADD: LOI TO BE SIGNED BY DIRECTOR AND STAMPED BY OFF COLORED COMPANY STAMP, OR SIGNED BY AUTH PERSON WITH POA

-- owners allow chtrs a/o their agent to sign/release bs/l on behalf of master in accordance with mates receipt.

-- owners gtee to give 15(IF APPLICABLE)/10/7/5 days approximate delivery notice flwd by 3/2/1 days definite delivery notice

chtrs gtee to give 20/15/10/7/5 days approximate redelivery notice flwd by 3/2/1 days definite redelivery notice

-- time of dely/rdly to be based on gmt.hire calculation to be also based on gmt.lycn to be based on local time

--Chrts has the option to stow 3 tiers of coils with unit weight of 10 mt OR 2 tiers of coils with unit weight 15mt but always upto vsl tanktop strength.

AS PER STEEL LOADING MANUAL (PLS SEE ATTACHED)

--owners/master cfm chtrs lashing/dunnage plan - confirm lashing plan and owners confirm dunnage size of 100*100 mm
--owners/master cfm chtrs pre-stowage plan.- confirm

--owners allow chtrs to loading and discharging during rain against chtrs loi
SUB HEAD OWS APPROVAL - OWS TO ENDEAVOUR TO OBTAIN HEAD OWS APPROVAL ASAP

--owners gtee all crew members are covid-19 free before arrival 1st loading port.
In case any crew is tested positive of covid-19 upon vessel arrival 1st loading port,whatsoever lost and related expenses/cost incurred in connection to the same shall be for owners acct and vessel shall be off-hire.

PART IV:

1. dely:dlosp Hongkong, atdnshinc
2. lay/can:14-18 Nov 2021

3. 1 tct via sas,sbs,sps,aaaa,awinl with lawful & harmless cgo,dur abt 65 days wog

Pls adv cgo/trading exclusions,tbma
AS PER BTB CGO TRADING EXCLUSION,

it's expressly agreed by owrs that vsl is allowed to call China,Korea,Japan,USA
OK

Clause 97 – Padeye Clause
Charterers have the option to weld pad-eyes on deck/hatch cover/in holds (except FO tank-top) at Charterers' time/expense and same to be removed prior to redelivery.
however charterers can remain all pad-eyes on board with 30 usd per unit and to be paid with 3rd hire

4. redely: dlosp 1sp Baltimore - Savannah range ,PICO atdnshinc

5. hire: usd 29,000 pdpr diot for first 65 days, thereafter usd 35500 pdpr

6. hire payment :
1st hire 20days no bunkers in three bd on delivery + ilohc.
Hire THEREAFTER to be paid 15 days in advance, or up to est redelivery as per latest available prospects.
Ows settle directly all ows expenses, no deductions from hire.
Brob on redly abt same QTY/GRADES as on dely (abt = +/-5 pct)

7. ilohc:usd 6000 lumpsum EXCL removal/disposal all dunnage/lashing materials/debris/etc
c/e/v: chtrs to pay usd 1500 per 30 DYS PR for covering all cable, communications, victualling, representation and entertainment
8. bunker cls:
bod: Abt 400 mt vlsfo PLUS abt 150 mt lsmgo
bor abt same quantity and GRADES as exactly bod (abt = +/-5 pct)

Bunker prices: $650 vlsfo / $780 lsmgo

chtrs have option to bunker iso 8217 2010
ADD: But ALWAYS complying with latest sulphur requirements

9. arbitration if any in london with english law to apply.

10. 3.75pct add comm to chtrs + 1.25% to oino shipbrokers (pble by ows)

11. other terms/conditions as per owners btb cp attached with logical alterations in line with mainterms except:-

Rider

**Clause 38 – <u>Bunkers on Delivery and Redelivery</u>**
Delete"but always sufficient to reach nearest main bunkering port."

**Clause 39 – <u>Cancellation due to Extended Off-Hire</u>**
Replace 45 (forty five) days by 30(thirty) days

**Clause 54 – <u>Inter-Club Agreement</u>**
Delete in full and replaced by Interclub agreement 1996 or subsequent amendments

**Clause 87 – <u>Bottom Fouling</u>**
Replace fifteen(15) days by twenty-two(22)days
Add"Chtrs have option to redeliver the vessel at lumpsum usd 65,000 without cleaning the vessel bottom
which to be advised 7 days prior redelivery."

Add"Owners gtee vessel is equipped with water-ballast system"

12. ALL SUBJ LIFTED

end

BEST REGARDS,

TYAN CHWAN RONG, CHRIS
OINO SHIPBROKERS CO.LTD.
Tel : +65 6496 9470
Mob : +65 9847 4091
Email : oino@kakoulidis.sg
SKYPE : chwanrong

crr

## Aaron B. Greenbaum

| | |
|---|---|
| **From:** | Aaron B. Greenbaum <aaron.greenbaum@pjgglaw.com> |
| **Sent:** | Thursday, December 22, 2022 4:00 PM |
| **To:** | Maloney, Brian P.; Paulsen, Bruce; David Sharpe |
| **Cc:** | O'Connor, Robert E. (roconnor@mmwr.com); Shelia Tolar |
| **Subject:** | Hawthorne Industrial Products v. Hanwin Shipping Limited, et al - EDLA, Civ. No. 2:22-cv-02724 |
| **Attachments:** | 22.12.22 - CORR to Hanwin fwd Waiver of Summons.pdf; Documents.pdf; Waiver of Summons - Hanwin.pdf |

Brian, Bruce, and David,

Please find attached correspondence being sent on behalf of Hawthorne Industrial Products to Hanwin Shipping Limited via FedEx, as well as the enclosed pleadings and waiver of service of summons form.

Please let me know if you have any issues opening the attached.

Best Regards,

Aaron

**Aaron B. Greenbaum**
*Member*
PUSATERI, JOHNSTON, GUILLOT & GREENBAUM, LLC



**Direct:** (504) 620-2370
**Main:** (504) 620-2500
**Fax:** (504) 620-2510
1100 Poydras St., Ste. 2250
New Orleans, LA 70163
www.PJGGLAW.com

**Located in Louisiana. Admitted to Practice in Louisiana, Mississippi, and Texas.**

Confidentiality Notice: The information contained in this email and any attachments may be legally privileged and include confidential information intended only for the recipient(s) identified above. If you are not an intended recipient, you are hereby notified that any dissemination, distribution, or copying of this email or its attachments is strictly prohibited. If you have received this email in error, please notify the sender by return email and permanently delete the email and any attachments immediately. Please do not retain, copy, or use this email or any attachments for any purpose, nor disclose all or any part of its contents to any other person. Pusateri, Johnston, Guillot & Greenbaum, LLC operates as a limited liability company.

**EXHIBIT**

**A-6**